IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| The Estate of James Joseph Foster, Jr., by Administrator Jennifer L. Foster, Jennifer L. Foster, individually, James Joseph Foster, Sr., individually, and Kenzee Lambertson as next friend on behalf of her minor children P. F. and L.F., <br><br> Plaintiffs, <br><br> vs. <br><br> City of Sioux City, Iowa, a municipality Carolina Ochoa, in her individual capacity; Donette Sassman, in her individual capacity; Alan Schmeckpeper, in his individual and official capacity; Deanna La Mere, in her individual capacity; Drake Carnahan, in his individual capacity; Dustin L. Johnson, in his individual capacity; Brandon R. DeRocher, in his individual capacity; Jordan Reinders, in his individual capacity; Jim Haden, in his individual and official capacity; Randall Wood, M.D., in his individual and official capacity; Sioux City Fire Rescue, and Sioux City Police Department, <br><br> Defendants. | Case No. 25-4024 <br><br><br> **FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs, by and through their attorney, Erin Jordan and Katie Naset of HOPE LAW

FIRM, respectfully allege for their Complaint and Jury Demand as follows:

I.    <u>**INTRODUCTION**</u>

1.    "I can't breathe."  "Am I gonna die?"

1

2. In the early morning hours of August 18, 2023, James J. Foster, Jr.'s life was unnecessarily and unlawfully ended by the Defendants.

3. Shortly before 4:00 a.m., a Sioux City Police Department officer responded to a call for a man sitting or lying in a deserted residential street. Upon arriving to the scene the officer encountered Mr. Foster, who stated he had injured his arm.

4. Eight people from Sioux City Police Department and Sioux City Fire Rescue responded to this scene for Mr. Foster's report that he may have injured his arm. No one reported to this scene on an emergent basis, or with lights and sirens.

5. Mr. Foster never posed any threat to the Defendants, instead acting disoriented and fearful of them, moving away from them repeatedly.

6. Defendant paramedic Deanna LaMere decided that this was an appropriate situation for chemical restraint and that Mr. Foster needed to be injected with the powerful incapacitating drug Ketamine.

7. With the physical assistance of Defendants, Mr. Foster was held down and injected against his will by Defendant Paramedic LaMere. However, instead of injecting him with Ketamine, she injected him with a lethal dose of the paralytic medication Rocuronium.

8. After his injection, Mr. Foster began crying that he was going to die and repeatedly stating the unfortunately all too familiar refrain that he couldn't breathe.

9. Defendant LaMere realized that she had given the incorrect and life-threatening medication Rocuronium, but she did not notify anyone nor did she take any action to protect his airway and/or intubate him before he became paralyzed and unable to breathe.

10. Mr. Foster's breathing deteriorated almost immediately, and he began to desperately gasp and wheeze for air, as clearly audible and visible on body cam footage.

2

11. Not a single person on-scene mentioned Mr. Foster's objectively obvious respiratory distress and, instead, police officers handcuffed the chemically incapacitated Mr. Foster and strapped him to a gurney.

12. Shortly after he was taken from the scene by ambulance, Mr. Foster lost the ability to breathe, due to chemical paralysis, and he went into cardiac arrest with an unprotected airway. This arrest would deprive his brain of oxygen and he died days later, after confirmation of brain death, from an anoxic brain injury due to the administration of Rocuronium and the Defendants' refusal to address his respiratory distress on-scene.

## II.      JURISDICTION AND VENUE

13. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

14. Jurisdiction for Plaintiffs' supplemental state law claims, brought under Iowa State Law, is conferred by 28 U.S.C. § 1367.

15. Venue is proper in the District of Iowa, Northern District, Western Division pursuant to 28 U.S.C. 1391(b). All of the events alleged herein occurred in Sioux City, Iowa.

16. This Court has subject matter jurisdiction over the claims asserted herein and personal jurisdiction over the parties hereto.

## III.     PARTIES

17. At all times relevant to the subject matter of this Complaint, the decedent, James Joseph Foster, Jr. was a citizen of the United States of America and a resident of and domiciled

3

in Sioux City, Iowa. At all relevant times, Plaintiff Jennifer Foster was the duly appointed Administrator of the Estate of James Joseph Foster, Jr.

18. Plaintiff Jennifer Foster is Mr. Foster's biological mother. At all times relevant to the subject matter of this Complaint, Jennifer Foster was a citizen of the United States of America and a resident of and domiciled in Sioux City, Iowa.

19. Plaintiff James Joseph Foster, Sr. is Mr. Foster's biological father. At all times relevant to the subject matter of this Complaint, James Foster, Sr. was a citizen of the United States of America and a resident of and domiciled in Sioux City, Iowa.

20. Plaintiff Kenzee Lambertson is the biological mother of Mr. Foster's biological minor children P. F. and L.F. Ms. Lambertson brings claims in this matter as next friend of P.F. and L.F. At all times relevant to the subject matter of this Complaint, Ms. Lambertson was a citizen of the United States of America and a resident of and domiciled in Sioux City, Iowa.

21. Plaintiff P.F. is Mr. Foster's biological child. At all times relevant to the subject matter of this Complaint, P.F. was a citizen of the United States of America and a resident of and domiciled in Sioux City, Iowa.

22. Plaintiff L.F. is Mr. Foster's biological child. At all times relevant to the subject matter of this Complaint, P.F. was a citizen of the United States of America and a resident of and domiciled in Sioux City, Iowa.

23. Defendant the City of Sioux City, Iowa is a municipality organized under the laws of the State of Iowa and is a "person" subject to suit under 42 U.S.C. § 1983. The Sioux City Police Department is a law enforcement agency that is part of the City of Sioux City,

Iowa. Sioux City Fire Rescue is a fire department that is part of the City of Sioux City, Iowa.

24. At all times relevant to the subject matter of this Complaint, Defendant City of Sioux City was responsible for the oversight, supervision, discipline and training of the Sioux City Police Department and Sioux City Fire Rescue.

25. At all times relevant to the subject matter of this Complaint, Defendant City of Sioux City, Iowa had a nondelegable duty to provide adequate medical care to individuals who received emergency medical responder services.

26. At all times relevant to the subject matter of this Complaint, Defendants Carolina Ochoa, Donette Sassman, and Alan Schmeckpeper were citizens of the United States of America and were residents of Iowa domiciled in Iowa. At all relevant times, Defendants Carolina Ochoa, Donette Sassman, and Alan Schmeckpeper were acting within the scope of their official duties and employment and under the color of state law in their capacity as law enforcement officers employed by the Sioux City Police Department and/or the City of Sioux City, Iowa.

27. At all times relevant to the subject matter of this Complaint, Defendants Deanna LaMere, Drake Carnahan, Dustin L. Johnson, Brandon R. DeRocher, Jordan Reinders, Jim Haden and Randall Wood, M.D. were citizens of the United States of America and were residents of Iowa domiciled in Iowa. At all relevant times, Defendants Deanna LaMere, Drake Carnahan, Dustin L. Johnson, Brandon R. DeRocher, Jordan Reinders, Jim Haden and Randall Wood, M.D. were acting within the scope of their official duties and employment and under the color of state law in their capacity as physicians, paramedics,

advanced EMTs and EMTs employed by Sioux City Fire Rescue and/or the City of Sioux City, Iowa

28. At all times relevant to the subject matter of this Complaint, Defendant Jim Haden was the EMS Director of Sioux City Fire Rescue.

29. At all times relevant to the subject matter of this Complaint, Defendant Randall Wood, M.D. was the medical director of Sioux City Fire Rescue.

## IV.      FACTUAL ALLEGATIONS

30. Defendant Officer Ochoa was dispatched in the early morning hours of August 18, 2023 to a report of an individual sitting or lying in the street.  She responded without lights or sirens.  She was not responding to an emergency, nor was there an emergency when she arrived.

31. At 3:53 a.m., Defendant Officer Ochoa encountered Mr. Foster on 3rd Street in Sioux City.  He was sitting and/or laying near the curb of the street.  Officer Ochoa parked her patrol car near Mr. Foster and asked how she could help him.  Mr. Foster reported that he did not need assistance and that it was humiliating for her to encounter him like that.  She assured him it was not humiliating and again offered to assist.

32. Mr. Foster reported that he had hurt his arm.

33. Officer Ochoa radioed for medical assistance, Code 1 (non-emergency, no lights or sirens).

34. Mr. Foster had his hands up and appeared confused and disoriented while speaking to Officer Ochoa.

35. At 3:57 a.m., Officer Ochoa attempted to assist Mr. Foster to move from his position and he reacted in fright, moving away from her.

6

36. Defendant Sergeant Schmeckpeper, patrol supervisor, arrived at the scene at 3:57 a.m. He arrived without lights or sirens. Sergeant Schmeckpeper was not responding to an emergency, nor was there an emergency when he arrived. He shone his flashlight on Mr. Foster and asked him his name.

37. Defendant Paramedic LaMere arrived on scene at 3:57 a.m. in response to Officer Ochoa's call for Code 1 medical assistance. She was not responding to an emergency, nor was there an emergency when she arrived. Arriving with her were Defendants EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders. They were not responding to an emergency, nor was there an emergency when they arrived. These Defendants all arrived on scene without lights or sirens.

38. Paramedic LaMere asked Mr. Foster "What kind of drugs do you got on board?" at 3:58 a.m. She did so from several feet away and failed to do any assessment, nor did she attempt to do any sort of assessment of Mr. Foster. She then asked "What did you take tonight?"

39. Mr. Foster responded that he had information in his car. Paramedic LaMere asked "Are you schizophrenic? Are you supposed to be taking some meds?" No Defendant EMT conducted any assessment of Mr. Foster, nor attempted to conduct any assessment of him at this or any other time during this incident.

40. Deanna LaMere falsely recorded in the incident report/run sheet that she conducted an ALS (advanced life support) assessment of Mr. Foster when she arrived on scene, although body cam footage clearly shows that this was not done by her or any other responder.

41. At 3:59 a.m., Officer Ochoa asked Mr. Foster if there was anything medical could do for him and he responded "no."

42. Also at 3:59 a.m., Sergeant Schmeckpeper and Defendant EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, or Jordan Reinders discussed Mr. Foster's condition and Sergeant Schmeckpeper stated that he did not know if Mr. Foster even had any injuries.

43. Mr. Foster then reported that his arm was causing him pain.

44. Paramedic LaMere called Mr. Foster's name several times. At this time, Mr. Foster was lying on the ground, with his arms behind him.

45. Mr. Foster was unarmed, surrounded by eight responding individuals, including multiple armed police officers, and never made any move toward any responding individual or posed a threat to them in any way.

46. Officer Ochoa again tried to assist Mr. Foster to stand at 4:00 a.m. and he reported that he was experiencing pain and then agreed to medical assistance.

47. At 4:01 a.m., Paramedic LaMere said to Mr. Foster "Let's get up and go to the ambulance." Mr. Foster responded "I can't." Paramedic LaMere responded "yes you can," and Officer Ochoa stated "we'll help you."

48. Defendants then attempted to assist Mr. Foster to stand up and walk to the ambulance but he became frightened and started to cry.

49. Paramedic LaMere described Mr. Foster's actions at this time as follows: "he scoots away on hands and knees like is an animal." [sic]

50. Defendants then rolled a gurney next to Mr. Foster and he again moved away in fear as he remained disoriented.

8

51. At this time, Mr. Foster attempted to stand on his own and walk before falling down.

52. Between approximately 4:04 a.m. and 4:08 a.m., multiple Defendants stated that Mr. Foster was calm on the ground and that it was fine if they waited for him to be ready for assistance. He remained peacefully lying on the ground at this time.

53. At 4:08 a.m., Mr. Foster unsuccessfully attempted to stand.

54. At 4:08 a.m., Paramedic LaMere returned from her emergency response vehicle and approached Mr. Foster with a syringe accompanied by Defendant EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, or Jordan Reinders.

55. Multiple Defendants, including Paramedic LaMere, Officer Ochoa and Sergeant Schmeckpeper forcibly held Mr. Foster down against his will so that Paramedic LaMere could inject him with medication he had not been told about and that he did not consent to have.

56. There was no medical indication for an injection and Mr. Foster had still not been assessed in any way at this time.

57. Paramedic LaMere did not verify the medication that she drew up for Mr. Foster. She asked her partner (one of the Defendants) to "verify" the medication was correct even though he did not actually witness her drawing up the medication.

58. Paramedic LaMere falsely recorded that she and her EMT partner verified the correct dose again falsifying the incident report/run sheet

59. Paramedic LaMere informed the on-scene Defendants that she was injecting Ketamine to chemically restrain Mr. Foster. However, she injected him with a powerful and dangerous paralytic agent used in intubation procedures, Rocuronium.

9

60. While receiving the injection, Mr. Foster screamed and asked if the injection would kill him. He reported that the injection was causing him pain and he was told by one of the on-scene Defendants that it would help him relax.

61. Paramedic LaMere stated "you're fine" in response to Mr. Foster's distress and thanked the on-scene Defendants for holding Mr. Foster down, audibly chuckling at Mr. Foster.

62. At 4:09 a.m. Paramedic LaMere told the on-scene Defendants "all right that's Ketamine it should be kicking in like now."

63. The on-scene Defendants then moved Mr. Foster to a gurney. He repeatedly stated that he was afraid they were trying to kill him.

64. There were numerous other options other than chemical restraint for Mr. Foster. Not only were they not implemented, they were never even considered by any one of the eight responding individuals.

65. Mr. Foster was handcuffed at 4:10 a.m. Immediately afterword he began to struggle to breathe, audibly gasping for air and asking "Am I gonna die?"

66. Mr. Foster then began to repeatedly cry "I can't breathe."

67. Mr. Foster's breathing deteriorated almost immediately and becoming labored as he audibly and visibly gasped and wheezed as displayed clearly on Sergeant Schmeckpeper's body cam footage.

68. Not a single on-scene Defendant checked to see if Mr. Foster was in medical distress or if he needed medical attention. It would be apparent to any lay person at this point that Mr. Foster could not breathe and needed further medical attention. However, not a single Defendant mentioned that Mr. Foster was struggling to breathe.

69. At some time between when she injected Mr. Foster and 4:11 a.m. Paramedic LaMere discovered that she had injected Mr. Foster with a lethal dose of Rocuronium and knew that he needed immediate attention to survive. However, she informed no one of this medication error and took no action to prevent Mr. Foster from going into cardiac arrest.

70. Even with Paramedic LaMere's failure to inform the on-scene Defendants about what she had done, it was apparent that he needed medical attention. They had a duty to act and they did nothing.

71. At 4:11 a.m. Mr. Foster stated that he was dying. Sergeant Schmeckpeper responded: "You're not gonna die, you're fine."

72. Paramedic LaMere and Officer Schmeckpeper falsely stated in their reports that Mr. Foster began "kicking and swinging" at personnel or "pulled on one of the firefighter's legs with his arms" after he was injected. Body cam footage clearly shows that this did not occur. Additionally, even if this had occurred, it would not have been cause for the chemical restraint as it did not occur until Mr. Foster had already been injected with a lethal dose of Rocuronium and was unable to breathe.

73. As Mr. Foster gasped for air and pleaded that he did not want to die, the on-scene Defendants restrained him, held him down and then further restrained him on the gurney by handcuffing him.

74. At 4:13 a.m., as Mr. Foster stopped all movement due to the Rocuronium, and one of the on-scene Defendants then told him "night night." Mr. Foster's eyes remained open while he lay motionless on the stretcher.

75. No on-scene Defendant assessed Mr. Foster's breathing or vital signs even though it is known that Ketamine (the intended medication) is a respiratory depressant.

11

76. Knowing that Mr. Foster had been injected with a lethal dose of Rocuronium, Deanna LaMere told the police officers to remove Mr. Foster's handcuffs, stating "I don't see any problems. I think he'll be sleeping now."

77. After the ambulance left the scene, Sergeant Schmeckpeper exclaimed, "teamwork!" indicating a successful response to a scene.

78. Once in the ambulance, Mr. Foster's breathing worsened, and Paramedic LaMere and the other Sioux City Fire Rescue Defendants applied oxygen and an oropharyngeal airway, but did not attempt to intubate him or call for help.

79. At 4:14 a.m. Mr. Foster was ventilated by bag valve mask.

80. Mr. Foster's heart stopped at 4:18 a.m. and EMT Reinders started CPR.

81. Mr. Foster was given epinephrine at 4:21 a.m. and was intubated at 4:25 a.m.

82. Deanna LaMere called ahead to the acute care hospital and reported Mr. Foster's condition and falsely reported that he had received Ketamine. She did not advise medical personnel about the fact that she had injected Mr. Foster with a lethal dose of Rocuronium.

83. Mr. Foster received another dose of epinephrine at 4:28 a.m.

84. When Mr. Foster arrived at Mercy Medical Center, Deanna LaMere finally informed medical personnel that she had injected him with Rocuronium. She then continued her clumsy cover-up when she improperly disposed of the vials of Rocuronium and Ketamine in a sharps container in contravention of Sioux City Fire Rescue's policies and procedures and/or protocols.

85. Mr. Foster died two days later at Mercy Medical Center – Sioux City as a result of the cardiac arrest and the brain death he experienced due to the Rocuronium, egregiously

12

substandard medical care and the violations of his Constitutional rights by the Defendants.

## V.     CLAIMS FOR RELIEF

### Count I

### 42 U.S.C. § 1983 – Fourth Amendment

### Excessive Force

**Estate of James Foster, Jr. against Officer Carolina Ochoa, in her individual capacity, Officer Donette Sassman, in her individual capacity and Sergeant Alan Schmeckpeper, in his individual capacity**

86. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

87. At all times relevant to the allegations in this Complaint, Defendants Officer Carolina Ochoa, Officer Donette Sassman, and Sergeant Alan Schmeckpeper, in their individual capacities (hereinafter "SCPD Individual Defendants") acted under color of state law, and within the course and scope of their official duties and employment in their capacities of officers and a Sergeant of the Sioux City Police Department, part of the City of Sioux City.

88. The City of Sioux City and the SCPD Individual Defendants are "persons" under 42 U.S.C. § 1983.

89. Under the Fourth Amendment, as incorporated against the states by the Fourteenth Amendment, Decedent Mr. Foster had a clearly established constitutional right to be secure in his person against unreasonable seizures through the use of excessive force.

90. Under the application of the specific facts and totality of circumstances as described herein, the SCPD Individual Defendants violated Mr. Foster's clearly established constitutional rights.

13

91. Any reasonable law enforcement officer knew or should have known of these clearly established rights at the time of Mr. Foster's death.

92. The SCPD Individual Defendants did not have a valid legal basis to seize Mr. Foster in the manner and with the level of force used under the circumstances present, including holding him down to be injected with medication against his will, holding him down when he was in clear respiratory distress, and handcuffing him while he was in clear respiratory distress.

93. The SCPD Individual Defendants unlawfully seized Mr. Foster by means of objectively unreasonable and excessive force when they had no reasonable belief Mr. Foster possessed a weapon or posed a threat to any officer or any other person.

94. There was no need for the use of force against Mr. Foster or the amount of force applied against Mr. Foster. Once he had been injected, there was no need to place him in handcuffs or to hold him down.

95. Mr. Foster's presence in an empty, quiet residential street did not create a security problem severe enough to warrant the use of force.

96. Mr. Foster did not actively resist any SCPD Individual until he was held down and injected against his will.

97. Mr. Foster sustained the most serious injury possible – death.

98. Any SCPD Individual Defendants who observed other SCPD Individual Defendants' unlawful seizure and use of force against Mr. Foster had a legal duty to intervene to stop this illegal conduct.

14

99. The SCPD Individual Defendants engaged in and/or failed to intervene in the use of force that was objectively unreasonable in light of the facts and circumstances surrounding them, violating Mr. Foster's Fourth Amendment rights.

100.     The SCPD Individual Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them with a frightened and disoriented man stating only that he had injured his arm.

101.     The SCPD Individual Defendants' excessive use of force and/or failure to intervene to prevent the excessive use of force caused Mr. Foster to be unlawfully seized and thereby caused his death.

102.     All SCPD Individual Defendants caused Mr. Foster to be deprived of his constitutional right to be free from excessive force because, by failing to protect him from the use of excessive force by each of the Defendants, these Defendants set in motion a series of events that they knew or reasonably should have known would cause the SCPD Individual Defendants to deprive Mr. Foster of his clearly established constitutional rights.

103.     All SCPD Individual Defendants' actions, as described herein, were motivated by malice or involved reckless or callous indifference to Mr. Foster's federally protected rights, and they engaged in these actions and omissions willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Mr. Foster's clearly established constitutionally protected rights.

104.     There herein described acts or omissions of the SCPD Individual Defendants were the proximate cause of Plaintiff Estate's significant injuries, damages, and losses, including Mr. Foster's death.

15

105.    There herein described acts or omissions of the SCPD Individual Defendants were the proximate cause of Plaintiff Estate's injuries and losses, including but not limited to Mr. Foster's death, the physical and mental pain and anguish Mr. Foster suffered before and during his death, the loss of Mr. Foster's relationship with his family and friends, the loss of Mr. Foster's constitutional rights, his loss of enjoyment of life and other compensatory and special damages including but not limited to Mr. Foster's loss of accumulation of his estate, medical bills and funeral expenses.

**Count II**

**42 U.S.C. § 1983 – Fourth Amendment**

**Excessive Force**

**Estate of James Foster, Jr. against paramedic Deanna LaMere, in her individual capacity**

106.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

107.    At all times relevant to the allegations in this Complaint, Defendant Deanna LaMere acted under color of state law, and within the course and scope of her official duties and employment in her capacity as a paramedic for Sioux City Fire Rescue on behalf of the City of Sioux City.

108.    Defendant Deanna LaMere is a "person" under 42 U.S.C. § 1983.

109.    Under the Fourth Amendment, as incorporated against the states by the Fourteenth Amendment, Decedent Mr. Foster had a clearly established constitutional right to be secure in his person against unreasonable seizures through the use of excessive force.

110.    Under the application of the specific facts and totality of circumstances as described herein, Deanna LaMere violated Mr. Foster's clearly established constitutional rights.

16

111.    Any reasonable city employed paramedic would know or should have known of these clearly established rights at the time of Mr. Foster's death.

112.    Deanna LaMere did not have a valid legal basis to seize Mr. Foster in the manner and with the level of force used under the circumstances present, including administering a paralyzing agent, Rocuronium.

113.    Rocuronium is a paralyzing agent, rather than a sedating agent like Ketamine, and thus constitutes more force than the administration of Ketamine.

114.    Deanna LaMere unlawfully seized Mr. Foster by means of objectively unreasonable and excessive force when she had no reasonable belief Mr. Foster possessed a weapon or posed a threat to anyone at the scene.

115.    Mr. Foster's presence in the street did not create a security problem severe enough to warrant the use of force.

116.    Mr. Foster did not actively resist until after he was injected with a fatal dose of Rocuronium against his will.

117.    Mr. Foster sustained the most serious injury possible – death.

118.    Deanna LaMere engaged in the use of force that was objectively unreasonable in light of the facts and circumstances surrounding them, violating Mr. Foster's Fourth Amendment rights.

119.    Deanna LaMere's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting her with a frightened and disoriented man stating only that he had injured his arm.

120.    Deanna LaMere's excessive use of force caused Mr. Foster to be unlawfully seized and thereby caused his death.

17

121.     Deanna LaMere set in motion a series of events that she knew or reasonably should have known would cause the deprivation of Mr. Foster's clearly established constitutional rights.

122.     Upon information and belief, Rocuronium and Ketamine are stored in separate parts of the emergency response vehicle and Rocuronium contains an obvious warning label that it is a paralytic. Deanna LaMere admitted in related proceedings that she did not verify the medication prior to injecting it in Mr. Foster, and falsified records that state that she did so.

123.     Deanna LaMere knew, or should have known, and any reasonable paramedic in her situation would have known or should have known, that Mr. Foster required immediate airway protection and/or intubation after the administration of Rocuronium. Her failure to do this constitutes legal malice, recklessness and callous indifference to Mr. Foster's federally protected and clearly established constitutional rights.

124.     Deanna LaMere's actions, as described herein, were motivated by legal malice or involved reckless or callous indifference to Mr. Foster's federally protected rights, and she engaged in these actions and omissions willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Mr. Foster's constitutionally protected rights.

125.     There herein described acts or omissions of Deanna LaMere were the proximate cause of Plaintiff Estate's significant injuries, damages, and losses, including Mr. Foster's death.

126.     There herein described acts or omissions of Deanna LaMere were the proximate cause of Plaintiff Estate's injuries and losses, including but not limited to Mr. Foster's

death, the physical and mental pain and anguish Mr. Foster suffered before and during his

death, the loss of Mr. Foster's relationship with his family and friends, the loss of Mr.

Foster's constitutional rights, his loss of enjoyment of life and other compensatory and

special damages including but not limited to Mr. Foster's loss of accumulation of his

estate, medical bills and funeral expenses.

## Count III

## 42 U.S.C. § 1983 – Fourteenth Amendment

## Deliberate Indifference to Serious Medical Need

**Estate of James Foster, Jr. against Defendants Deanna LaMere, in her individual capacity, Drake Carnahan, in his individual capacity, Dustin L. Johnson, in his individual capacity, Brandon R. DeRocher, in his individual capacity and Jordan Reinders in his individual capacity**

127.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

128.     At all times relevant to the allegations in this Complaint, Deanna LaMere, Drake

Carnahan, Dustin L. Johnson, Brandon R. DeRocher, and Jordan Reinders, in their

individual capacities (hereinafter "SCFR Individual Defendants") acted (and failed to act)

under color of state law and within the course and scope of their employment by the City

of Sioux City.

129.     At the time of Mr. Foster's herein-described interactions with Sioux City Fire

Rescue, he was restrained by the SCFR Individual Defendants and/or SCPD Individual

Defendants when he was held down by officers, paramedics, and EMTs, handcuffed and

chemically incapacitated (intended to be by Ketamine, still incapacitated by

Rocuronium).

130.     Because Mr. Foster was restrained by SCFR Individual Defendants and/or SCPD

Individual Defendants, all on-scene Defendants had rendered Mr. Foster unable to care

19

for himself. Thus, the SCFR Individual Defendants had a constitutional duty to protect Mr. Foster and to provide for his basic human needs such as medical care.

131. Mr. Foster had a clearly established due process right under the Fourteenth Amendment to be kept reasonably safe, to have his basic human needs provided for, and to receive adequate medical care while restrained by the SCFR Individual Defendants and/or SCPD Individual Defendants.

132. Under the Fourteenth Amendment, Mr. Foster was protected from conduct that was not rationally related to a legitimate nonpunitive governmental purpose or actions that appear excessive in relation to that purpose.

133. Each SCFR Individual Defendant knew or should have known of these clearly established rights at the time of their contact with Mr. Foster.

134. Under the application of the specific facts and totality of circumstances as described herein, the SCFR Individual Defendants violated Mr. Foster's clearly established constitutional rights.

135. The SCFR Individual Defendants had a subjective mental state of deliberate indifference to Mr. Foster's serious and obvious medical needs. Their actions were also objectively unreasonable and in violation of proper professional judgment.

136. Mr. Foster was in obvious and serious need of aid and medical care and treatment during his contact with the SCFR Individual Defendants, when he was injected with a paralytic agent without being assessed either before or after, and was ignored as he struggled to breathe and cried out that he was dying. His need was objectively obvious and subjectively obvious to the Defendants, regardless of their knowledge (or lack thereof) that he was given Rocuronium rather than Ketamine as he was visibly unable to

breathe. Mr. Foster's serious medical need was so obvious even a layperson would easily recognize the necessity for a doctor's attention or additional medical attention.

137.     Rather than provide adequate medical care, the SCFR Individual Defendants compromised Mr. Foster's basic safety by allowing him to be handcuffed.

138.     Rather than provide adequate medical care, the SCFR Individual Defendants compromised Mr. Foster's basic safety by failing to assess him, take his vital signs or attend to him in any way despite his inability to breathe while on-scene.

139.     Rather than provide adequate medical care, and in spite of her knowledge that Mr. Foster needed immediate attention due to her administration of the paralytic Rocuronium, Defendant Deanna LaMere failed to address his basic safety and to provide the necessary medical care for someone who has been injected with a paralytic by informing her colleagues, protecting his airway, and calling for additional assistance.

140.     The SCFR Individual Defendants had an affirmative duty on their part to protect Mr. Foster from harm and they violated that duty.

141.     The SCFR Individual Defendants' actions and inaction also constituted deliberate indifference to Mr. Foster's obvious and serious medical needs by disregarding the fact that he could not breathe after he was injected and while he remained on-scene. A reasonable paramedic or EMT in the circumstances would have appreciated the high degree of risk involved in the SCFR Individual Defendants' actions and inactions – making the consequences of the SCFR Individual Defendants' conduct obvious.

142.     The SCFR Individual Defendants' conduct, when viewed objectively, deprived Mr. Foster of a minimal civilized measure of life's necessities knowing but disregarding

an excessive risk to his health and safety by failing to administer any aid whatsoever after he was injected and paralyzed and while he could not breathe while on-scene.

143.     By committing these actions and inactions, the SCFR Individual Defendants caused Mr. Foster's injuries and death and Plaintiffs' damages.

144.     The herein described acts and inactions were taken by the SCFR Individual Defendants in reckless and callous indifference to Mr. Foster's federally protected rights, and these Defendants engaged in these actions and omissions maliciously, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for Mr. Foster's constitutionally-protected rights, making an award of punitive damages appropriate.

145.     Deanna LaMere's acted with reckless and callous indifference to Mr. McClain's federally protected rights as she failed to address the fact that Mr. Foster had been injected with a paralytic by timely notifying other personnel on-scene, failing to timely notify the receiving hospital and taking action to protect his airway and assist in his recovery from the Rocuronium error.

146.     There herein described acts and omissions of the SCFR Individual Defendants were a legal, direct, and proximate cause of Plaintiff Estate's injuries and losses, including but not limited to Mr. Foster's death, the physical and mental pain Mr. Foster suffered before and during his death, the loss of Mr. Foster's constitutional rights, loss of enjoyment of life, and other compensatory and special damages including but not limited to Mr. Foster's medical bills, funeral expenses and loss of accumulation to his estate.

**Count IV**
**42 U.S.C. § 1983 – Fourteenth Amendment**
**Deliberate Indifference to Serious Medical Need**

22

**Estate of James Foster, Jr. against Officer Carolina Ochoa, in her individual capacity, Officer Donette Sassman, in her individual capacity and Sergeant Alan Schmeckpeper, in his individual capacity.**

147.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

148.    At all times relevant to the allegations in this Complaint, the SCPD Individual Defendants acted (and failed to act) under color of state law and within the course and scope of their employment.

149.    At the time of Mr. Foster's above-described interactions with Sioux City Police Department, he was restrained by the SCFR Individual Defendants and/or SCPD Individual Defendants when he was held down by officers and paramedics, handcuffed and chemically incapacitated (intended to be by Ketamine, still incapacitated by Rocuronium).

150.    Because Mr. Foster was restrained by SCFR Individual Defendants and/or SCPD Individual Defendants all on-scene Defendants had rendered Mr. Foster unable to care for himself.  Thus, the SCPD Individual Defendants had a constitutional duty to protect Mr. Foster and to provide for his basic human needs such as medical care.

151.    Mr. Foster had a clearly established due process right under the Fourteenth Amendment to be kept reasonably safe, to have his basic human needs provided for, and to receive adequate medical care while restrained by the SCFR Individual Defendants and/or SCPD Individual Defendants.

152.    Under the Fourteenth Amendment, Mr. Foster was protected from conduct that was not rationally related to a legitimate nonpunitive governmental purpose or actions that appear excessive in relation to that purpose.

23

153.     Each of the SCPD Individual Defendants knew or should have known of these clearly established rights at the time of their contact with Mr. Foster.

154.     Under the application of the specific facts and totality of circumstances as described herein, the SCPD Individual Defendants violated Mr. Foster's clearly established constitutional rights.

155.     The SCPD Individual Defendants had a subjective mental state of deliberate indifference to Mr. Foster's serious and obvious medical needs. Their actions were also objectively unreasonable and in violation of proper professional judgment.

156.     Mr. Foster was in obvious and serious need of aid and medical care and treatment during his contact with the SCPD Individual Defendants, when he was ignored as he struggled to breathe and cried out that he was dying. His need was objectively obvious and subjectively obvious to the Defendants, regardless of their knowledge or lack thereof that he was given Rocuronium rather than Ketamine as he was visibly unable to breathe. Mr. Foster's serious medical need was so obvious even a layperson would easily recognize the necessity for a doctor's attention or additional medical attention.

157.     Rather than provide adequate medical care, the SCPD Individual Defendants compromised Mr. Foster's basic safety by handcuffing him.

158.     Mr. Foster's persistent complaints that he could not breathe put the SCPD Individual Defendants on notice that the medical treatment he was receiving (or lack thereof) was inadequate.

159.     Mr. Foster's audible labored breathing and gasping for air put the SCPD Individual Defendants on notice that the medical treatment he was receiving (or lack thereof) was inadequate.

24

160. By ignoring Mr. Foster's persistent complaints that he could not breathe, he was dying and his audible labored breathing and gasping for air, the SCPD Individual Defendants ignored clear warning signs that the medical treatment provided to Mr. Foster on-scene (or lack thereof) was inadequate.

161. The SCPD Individual Defendants repeatedly disregarded Mr. Foster's fear that he was dying and statements that he could not breathe, and instead, incorrectly informed him that he was going to feel better.

162. The SCPD Individual Defendants were on-scene for the entirety of SCFR Individual Defendants' on-scene involvement and were aware that there was no action taken when Mr. Foster began to cry out that he could not breathe, exhibiting dangerously labored breathing and gasping for air. The SCPD Individual Defendants were aware that no action was taken in response to Mr. Foster's drastic change in condition.

163. The SCPD Individual Defendants' knowledge of Mr. Foster's grave condition and his inadequate medical attention and failure to act by requesting additional medical attention from on-scene or additional medical personnel constituted deliberate indifference to Mr. Foster's objectively and subjectively serious medical needs.

164. The SCPD Individual Defendants had an affirmative duty on their part to protect Mr. Foster from harm and they violated that duty.

165. The SCPD Individual Defendants' actions and inaction also constituted deliberate indifference to Mr. Foster's obvious and serious medical needs by disregarding the fact that he could not breathe. A reasonable officer or Sergeant in the circumstances would have appreciated the high degree of risk involved in the SCPD Individual Defendants'

actions and inactions – making the consequences of the SCPD Individual Defendants' conduct obvious.

166.     By committing these actions and inactions, the SCPD Individual Defendants caused Mr. Foster's injuries and death and Plaintiffs' damages.

167.     There herein described acts and omissions of the SCPD Individual Defendants were a legal, direct, and proximate cause of Plaintiff Estate's injuries and losses, including but not limited to Mr. Foster's death, the physical and mental pain Mr. Foster suffered before and during his death, the loss of Mr. Foster's constitutional rights, loss of enjoyment of life, and other compensatory and special damages including but not limited to Mr. Foster's medical bills, funeral expenses and loss of accumulation to his estate.

168.     The herein described acts and inactions were taken by the SCPD Individual Defendants in reckless and callous indifference to Mr. Foster's federally protected rights, and these Defendants engaged in these actions and omissions maliciously, willfully, and/or wantonly, demonstrating deliberate indifference to, and a reckless disregard for Mr. Foster's clearly established constitutionally-protected rights, making an award of punitive damages appropriate.

### Count V

### *Monell* Liability for Failure to Supervise

**The Estate of James Foster against Defendant City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity**

169.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

170.     Defendants the City of Sioux City, Sioux City Police Department and Seargent Schmeckpeper, in his official capacity, failed to supervise the SCPD Individual

Defendants in accordance with their widespread and usual custom, practice, habit or informal policies and procedures. Their failures to supervise establish the policies and customs of these Defendants such that *Monell* liability attaches.

171. Defendant Sergeant Schmeckpeper, in his official capacity, was a patrol supervisor and Sergeant on site when the SCPD Individual Defendants subjected Mr. Foster to excessive force, failed to intervene and when they acted with deliberate indifference to his serious medical needs.

172. Defendants City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper possessed supervisory authority over SCPD Individual Defendants at all relevant times regarding the claims in this Complaint.

173. The SCPD Individual Defendants were all municipal employees of Defendant the City of Sioux City and/or Sioux City Police Department at all times relevant to the claims herein.

174. Defendants City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity, failed in their supervisory duties to prevent the SCPD Individual Defendants' violations of Mr. Foster's clearly established constitutional rights, with knowledge that they were acting in violation of his clearly established constitutional rights, constituting deliberate indifference to those constitutional rights.

175. At all relevant times, Sergeant Schmeckpeper, in his official capacity, had a constitutional duty to adequately supervise all SCPD Individual Defendants. He failed to do so on-scene by failing to properly direct the conduct of his subordinates, failing to enforce proscriptions against the use of excessive force and/or failing to stop his subordinates' excessive use of force despite knowing or reasonably constructively

knowing that the SCPD Individual Defendants presented an excessive risk of harm to Mr. Foster and knowing that the SCPD Individual Defendants were inflicting excessive force on Mr. Foster. Violations of this duty included: allowing the SCPD Individual Defendants to hold Mr. Foster down to be injected, allowing the SCPD Individual Defendants to hold Mr. Foster down after he was injected, allowing the SCPD Individual Defendants to handcuff Mr. Foster while he was already chemically incapacitated, and allowing the SCPD Individual Defendants to physically restrain Mr. Foster when he posed no threat to any on-scene responders.

176.     At all relevant times, Sergeant Schmeckpeper, in his official capacity, had a constitutional duty to adequately supervise all SCPD Individual Defendants. He failed to do so on-scene by failing to properly direct the conduct of his subordinates, failing to enforce their responsibility to attend to a restrained person's serious medical needs, despite knowing or reasonably constructively knowing that the SCPD Individual Defendants presented an excessive risk of harm to Mr. Foster and knowing that the SCPD Individual Defendants were failing to attend to a restrained person's serious medical needs. These failures included all SCPD Individual Defendants' failure to obtain adequate medical attention for Mr. Foster after he was injected with a chemical restraint and when it was obvious that he could not breathe, all SCPD Individual Defendants' failure to intervene when the paramedic and EMTs on scene failed to attend to Mr. Foster's objectively obvious respiratory failure and all SCPD Individual Defendants' failure to assist Mr. Foster when he correctly cried out that he was dying.

177.     Sargeant Schmeckpeper's supervision of the SCPD Individual Defendants, done in his official capacity, including himself, Officer Ochoa and Officer Sassman was

grossly inadequate and caused the deprivation of Mr. Foster's clearly established Fourth

Amendment right to be free from excessive force and his clearly established Fourteenth

Amendment right for his serious medical needs to be addressed while restrained.

178.    Defendants City of Sioux City, Sioux City Police Department and Sergeant

Schmeckpeper had a constitutional duty to adequately supervise all SCPD Individual

Defendants and they failed to do this by properly monitoring patrol officers and their

interactions with paramedics when using chemical restraints, by failing to monitor their

compliance with policies and procedures and individuals' constitutional rights in a

situation that these Defendants would repeatedly face – the chemical restraint of

individuals encountered on patrol.  It was obvious to these Defendants that this situation

would recur frequently presenting the obvious potential for constitutional violations if

proper supervision was not conducted such that a failure to so supervise constituted

deliberate indifference to Mr. Foster and the public's constitutional rights as described

herein.

179.    These Defendants additionally failed to adequately supervise all SCPD Individual

Defendants by monitoring and supervising their compliance with their constitutional

responsibility to provide for basic needs of restrained individuals, including obtaining

assistance for detainees' serious medical needs in the face of clearly inadequate EMS

response to same.  These failures to supervise constituted deliberate indifference to Mr.

Foster's and the public's constitutional rights, including the right to be free from

excessive force and free from deliberate indifference to serious medical needs.

180.    Defendants the City of Sioux City, Sioux City Police Department and Seargent

Schmeckpeper, in his official capacity, failures to supervise the SCPD Individual

Defendants were the moving force behind the SCPD Individuals' violations of Mr. Foster's Fourth and Fourteenth Amendment rights as further on-scene supervision and overall monitoring and day to day oversight would have prevented the violation of these rights. The violation of Mr. Foster's constitutional rights was the highly predictable consequence of the municipality's failures to supervise.

181.     Defendants City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper's, in his official capacity, supervisory failures and deliberate indifference to Mr. Foster's and Plaintiffs' clearly established constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

## Count VI

### *Monell* Liability for Informal Custom

**The Estate of James Foster against Defendant City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity**

182.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

183.     The Sioux City Police Department's deprivation of Mr. Foster's constitutional rights was done in accordance with the Department, the City of Sioux City and Sergeant Schmeckpeper's, in his official capacity, widespread custom, habit, informal policy and/or practice of unlawful conduct including: the inappropriate (intended) use of Ketamine for law enforcement purposes; and the failure to take any action to assist a restrained individual with obvious and serious medical needs after his injection.

184.     The acts and omissions in which the SCPD Individual Defendants engaged were because of and pursuant to the widespread customs, practices, and/or informal policies of

30

Defendant City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity.

185.    The City of Sioux City, the Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity, have a longstanding, widespread and deliberately indifferent custom, habit, practice and/or informal policy of condoning and ratifying the inappropriate and unconstitutional use of chemical restraints and to disregard obvious and serious medical needs of detainees like Mr. Foster. It has become customary for this Defendant to use chemical restraint and to disregard obvious and serious medical needs of restrained individuals.

186.    The SCPD Individual Defendants' violation of Mr. Foster's clearly established constitutional rights, standing alone, is sufficient evidence of their herein-described habits, customs, informal policies, and/or practices, official or de facto, because all officers on scene, including a supervisor and Sergeant, acted in a similarly egregious manner, without any concern or comment that the violations of Mr. Foster's clearly established constitutional rights and his impending death were anything out of the ordinary. Additionally, Seargeant Schmeckpeper's exclamation of "teamwork!" after Mr. Foster was placed in the ambulance shows that the officers on scene proceeded in their usual and customary fashion, habit, custom or informal policy.

187.    The City of Sioux City, the Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity, were deliberately indifferent to Mr. Foster's clearly established constitutional rights because these entities knew or had constructive knowledge that individuals in Mr. Foster's position would be at a substantial risk of

suffering dangerous consequences from their habits, customs, patterns, practices and/or informal policies.

188.      There herein described acts or omissions of Defendant City of Sioux City, Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity, were the moving force behind the foreseeable violations of Mr. Foster's clearly established constitutional right to be free from excessive force and clearly established constitutional right to have his serious medical needs addressed and proximate cause of Plaintiff Estate's significant injuries, damages, and losses, including Mr. Foster's death.

189.      Defendants the City of Sioux City, the Sioux City Police Department and Sergeant Schmeckpeper's, in his official capacity, acts and omissions caused Mr. Foster's death and Plaintiffs' significant damages.

190.      There herein described acts or omissions of the Defendant City of Sioux City, the Sioux City Police Department and Sergeant Schmeckpeper, in his official capacity were the moving force and the legal direct and proximate cause of Plaintiff Estate's foreseeable injuries and losses, including but not limited to Mr. Foster's death, the physical and mental pain and anguish Mr. Foster suffered before and during his death, the loss of Mr. Foster's relationship with his family and friends, the loss of Mr. Foster's constitutional rights, his loss of enjoyment of life and other compensatory and special damages including but not limited to Mr. Foster's loss of accumulation of his estate, medical bills and funeral expenses.

191.      Defendants the City of Sioux City, the Sioux City Police Department and Sergeant Schmeckpeper's, in his individual capacity, actions and omissions, as described herein,

deprived Mr. Foster and the Plaintiffs of the clearly established rights, privileges, liberties and immunities secured by the Constitution of the United States of America.

## Count VII

### *Monell* Liability for Failure to Train

**The Estate of James Foster against Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity**

192.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

193.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity, failed to train the SCFR Individual Defendants in accordance with their widespread and usual custom, practice, habit or informal policies and procedures.  These failures to train establish the policies and customs of these Defendants such that *Monell* liability attaches.

194.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, had constitutional duties to and responsibilities to provide training to the SCFR Individual Defendants to act in accordance with individuals' clearly established constitutional rights.

195.     The SCFR Individual Defendants were all municipal employees of Defendant the City of Sioux City and/or Sioux City Fire Rescue at all times relevant to the claims herein.

196.     At all times relevant to the claims herein, Defendant Jim Haden was the EMS Director of Sioux City Fire Rescue and Defendant Randall Wood, M.D. was the Medical Director of Sioux City Fire Rescue.

197.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, failed in their duties to provide training to the SCFR Individual Defendants in order to prevent the SCFR Individual Defendants' violations of Mr. Foster's clearly established constitutional rights, with knowledge that they were acting in violation of his clearly established constitutional rights constituting deliberate indifference to those constitutional rights.

198.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, failed in their duties to provide training to the SCFR Individual Defendants in order to prevent the SCFR Individual Defendants' violations of Mr. Foster's clearly established constitutional rights regarding the following: 1) assessing patients in the field; 2) determining whether chemical restraint has a medical rather than law enforcement purpose; 3) assessing patients after they are given powerful medications like Ketamine and Rocuronium; 4) properly and timely communicating errors that are made so that patients can receive the care they need with their team and the receiving hospital; 5) addressing medication overdoses; 6) responding to respiratory distress; 7) verification of medications on scene; 8) distinguishing Ketamine from Rocuronium; and 9) communicating accurately an adverse event to a receiving hospital.

199.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his individual capacity, failure to train the SCFR Individual Defendants caused the deprivation of Mr. Foster's clearly established Fourth Amendment right to be free from excessive force and his clearly established Fourteenth Amendment right for his serious medical needs to be addressed while restrained.

200.     It was obvious to Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, that the situation presented by Mr. Foster would recur frequently presenting the obvious potential for constitutional violations if proper training was not conducted such that a failure to train the SCFR Individual Defendants constituted deliberate indifference to Mr. Foster and the public's constitutional rights as described herein.

201.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, failures to train the SCFR Individual Defendants were the moving force behind the SCFR Individuals' violations of Mr. Foster's Fourth and Fourteenth Amendment rights as further training would have prevented the violation of these rights. The violation of Mr. Foster's constitutional rights was the highly predictable consequence of the municipality's failures to train.

202.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, training failures and deliberate indifference to Mr. Foster's and Plaintiff's clearly established constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

## Count VIII

### *Monell* Liability for Failure to Screen, Investigate and Discipline

**The Estate of James Foster against Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity**

203.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

204.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity failed to screen, investigate

35

and discipline SCFR Individual Defendant Deanna LaMere in accordance with their widespread and usual custom, practice, habit or informal policies and procedures. These failures to screen, investigate and discipline establish the policies and customs of these Defendants such that *Monell* liability attaches.

205.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity, had constitutional duties to and responsibilities to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere to act in accordance with individuals' clearly established constitutional rights.

206.    Deanna LaMere was a municipal employee of Defendant the City of Sioux City and/or Sioux City Fire Rescue at all times relevant to the claims herein.

207.    At all times relevant to the claims herein, Defendant Jim Haden was the EMS Director of Sioux City Fire Rescue and Defendant Randall Wood, M.D. was the Medical Director of Sioux City Fire Rescue with supervisory, disciplinary and hiring/firing authority or influence regarding SCFR Individual Defendant Deanna LaMere.

208.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, failed in their duties to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere in order to prevent the her violations of Mr. Foster's clearly established constitutional rights, with knowledge that she had in the past and was likely to act again in violation of her patients' clearly established constitutional rights constituting deliberate indifference to those constitutional rights.

36

209.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his individual capacity, failed in their duties to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere in order to prevent her violations of Mr. Foster's clearly established constitutional rights in the following ways: 1) failing to properly screen her for hire; 2) failing to properly investigate and discipline her following multiple prior dangerous and injurious medication errors with patients in violation of their clearly established constitutional rights; and 3) failing to discipline her so that she was no longer in a position to fatally disregard Mr. Foster's clearly established constitutional rights

210.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, failure to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere caused the deprivation of Mr. Foster's clearly established Fourth Amendment right to be free from excessive force and his clearly established Fourteenth Amendment right for his serious medical needs to be addressed while restrained.

211.    It was obvious to Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D. that the situation presented by Mr. Foster would recur frequently with SCFR Individual Defendant Deanna LaMere due to her history, presenting the obvious potential for constitutional violations if proper screening, investigation and discipline was not conducted such that a failure to screen, investigate and train SCFR Individual Defendant Deanna LaMere constituted deliberate indifference to Mr. Foster and the public's constitutional rights as described herein.

37

212.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, failures to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere were the moving force behind her violations of Mr. Foster's Fourth and Fourteenth Amendment rights as further screening, investigation and discipline would have prevented the violation of these rights. The violation of Mr. Foster's constitutional rights was the highly predictable consequence of the municipality's failures to screen, investigate and discipline SCFR Individual Defendant Deanna LaMere.

213.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, failures and deliberate indifference to Mr. Foster's and Plaintiff's clearly established constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

**Count IX**

*Monell* **Liability for Failure to Supervise**

**The Estate of James Foster against Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity**

214.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

215.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity failed to supervise the SCFR Individual Defendants in accordance with their widespread and usual custom, practice, habit or informal policies and procedures. Their failures to supervise establish the policies and customs of these Defendants such that *Monell* liability attaches.

216.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity possessed supervisory authority over SCFR Individual Defendants at all relevant times regarding the claims in this Complaint.

217.     The SCFR Individual Defendants were all municipal employees of Defendant the City of Sioux City and/or Sioux City Fire Rescue at all times relevant to the claims herein.

218.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity, failed in their supervisory duties to prevent the SCFR Individual Defendants' violations of Mr. Foster's clearly established constitutional rights, with knowledge that they were acting in violation of his clearly established constitutional rights, constituting deliberate indifference to those constitutional rights.

219.     At all relevant times, Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity, had a constitutional duty to adequately supervise all SCFR Individual Defendants. They failed to do so by failing to enforce proscriptions against the use of excessive force despite knowing or reasonably constructively knowing that the SCFR Individual Defendants presented an excessive risk of harm to Mr. Foster. They failed to do so by failing to monitor their day-to-day work, including the SCFR Individual Defendants' use of chemical restraints and responses to adverse reactions to same, ability to assess patients and their routine of doing so upon arrival and before and after the application of

interventions, their ability to differentiate between different medications, and whether they were falsifying medication verifications.

220.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity had a constitutional duty to adequately supervise all SCFR Individual Defendants and they failed to do this by properly monitoring the SCFR Individual Defendants and their interactions with law enforcement when using chemical restraints, by failing to monitor their compliance with policies and procedures and individuals' constitutional rights in a situation that these Defendants would repeatedly face – the chemical restraint of individuals in conjunction with a law enforcement response.  It was obvious to these Defendants that this situation would recur frequently presenting the obvious potential for constitutional violations if proper supervision was not conducted such that a failure to so supervise constituted deliberate indifference to Mr. Foster and the public's clearly established constitutional rights as described herein.

221.     These Defendants additionally failed to adequately supervise all SCFR Individual Defendants by monitoring and supervising their compliance with their constitutional responsibility to provide for basic needs of restrained individuals, including obtaining assistance for detainees' serious medical needs after chemical restraint.  It was obvious to these Defendants that this situation would recur frequently presenting the obvious potential for constitutional violations if proper supervision was not conducted such that a failure to so supervise constituted deliberate indifference to Mr. Foster and the public's clearly established constitutional rights as described herein.

222.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his

official capacity, and Randall Wood, M.D.'s, in his official capacity, failures to supervise

the SCFR Individual Defendants were the moving force behind the SCFR Individuals'

violations of Mr. Foster's Fourth and Fourteenth Amendment rights as further on-scene

supervision and overall monitoring and day-to-day oversight would have prevented the

violation of these rights.  The violation of Mr. Foster's constitutional rights was the

highly predictable consequence of the municipality's failures to supervise.

223.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his

official capacity, and Randall Wood, M.D.'s, in his official capacity, supervisory failures

and deliberate indifference to Mr. Foster's and Plaintiffs' clearly established

constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

### Count X

### *Monell* Liability for Informal Custom

**The Estate of James Foster against Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity**

224.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

225.     Sioux City Fire Rescue's deprivation of Mr. Foster's constitutional rights was

done in accordance with Defendants the City of Sioux City, Sioux City Fire Rescue, Jim

Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity

widespread custom, habit, policy and/or practice of unlawful conduct including: the

inappropriate (intended) use of chemical restraints for law enforcement purposes; the

failure to take any action to assist a patient with obvious and serious medical needs after

his chemical restraint, failures to properly assess patients, failure to monitor chemically

41

restrained patients, informal policy of covering-up errors to the detriment of patients, an informal policy procedure and protocol that allowed for two medications to be confused, and custom and practice of false verifications of medication and dose by second EMT or paramedic.

226.     The acts and omissions in which the SCFR Individual Defendants engaged were because of and pursuant to the widespread customs, practices, and/or informal policies of Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity.

227.     Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity have a longstanding, widespread and deliberately indifferent custom, habit, practice and/or policy of condoning and ratifying the inappropriate (intended) use of Ketamine for law enforcement purposes; the failure to take any action to assist a patient with obvious and serious medical needs after his injection, failures to properly assess patients, failure to monitor chemically restrained patients, policy of covering-up errors to the detriment of patients, a policy procedure and protocol that allowed for two medications to be confused, and custom and practice of false verifications of medication and dose by second EMT or paramedic.

228.     The SCFR Individual Defendants' violation of Mr. Foster's clearly established constitutional rights, standing alone, is sufficient evidence of their herein-described widespread habits, customs, informal policies and/or practices, official or de facto, because all SCFR Individual Defendants on-scene acted in a similarly egregious manner, without any concern or comment that the violations of Mr. Foster's clearly established

constitutional rights and him impending death were anything out of the ordinary. Additionally, a SCFR Individual Defendant's exclamation "night night!" to Mr. Foster, the total disregard of Mr. Foster's fear that he was dying, total disregard of Mr. Foster's inability to breathe and the lack of reaction of any other SCFR Individual Defendant to these events shows that the SCFR Individual Defendants were acting in their usual and customary fashion, habit, custom or informal policy.

229. Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity, were deliberately indifferent to Mr. Foster's clearly established constitutional rights because these entities knew or had constructive knowledge that individuals in Mr. Foster's position would be at a substantial risk of suffering dangerous consequences from their habits, customs, patterns, practices and/or informal policies.

230. The herein described acts or omissions of Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D., in his official capacity were a moving force behind the foreseeable violations of Mr. Foster's clearly established constitutional right to be free from excessive force and clearly established constitutional right to have his serious medical needs addressed and proximate cause of Plaintiff Estate's significant injuries, damages, and losses, including Mr. Foster's death.

231. Deanna LaMere, Drake Carnahan, Dustin L. Johnson, Brandon R. DeRocher, and Jordan Reinders' violation of Mr. Foster's constitutional rights, standing alone, is sufficient evidence of their herein-described widespread customs, policies, and/or

practices, official or de facto, because all employees on scene, including a paramedic, advanced EMT and EMTs, acted in a similarly egregious manner.

232.    Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, actions and omissions, as described herein, deprived Mr. Foster and the Plaintiffs of the rights, privileges, liberties and immunities secured by the Constitution of the United States of America.

233.    Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, deliberate indifference and adherence to unconstitutional customs, policies, and/or practices, official or de facto is further established by the fact that, upon information and belief, Defendant LaMere had one or more incidents similar to the one at issue in this lawsuit that she was not properly disciplined, retrained or dismissed and her employment continued despite her previous failures endangering multiple patients.

234.    The need to put an end to these dangerous customs, policies and/or practices and for related adequate training and supervision, as well as the probability that the failure to do so would cause an individual like Mr. Foster to die or be seriously injured, was so obvious that Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, failure to do so constituted deliberate indifference to Mr. Foster's and Plaintiffs' constitutional rights.

235.    Defendants the City of Sioux City, Sioux City Fire Rescue, Jim Haden, in his official capacity, and Randall Wood, M.D.'s, in his official capacity, in his individual

capacity deliberate indifference to Mr. Foster's and Plaintiffs' constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

## Count XI

### Supervisory Liability Pursuant to 42 U.S.C. § 1983

**The Estate of James Foster against Sergeant Schmeckpeper, in his individual capacity**

236.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

237.    Defendant Sergeant Schmeckpeper, in his individual capacity, was a patrol supervisor on site when the SCPD Individual Defendants subjected Mr. Foster to excessive force and failed to intervene.

238.    Defendant Sergeant Schmeckpeper possessed supervisory authority over SCPD Individual Defendants.

239.    At all relevant times, Sergeant Schmeckpeper had a legal duty to adequately supervise all SCPD Individual Defendants.  He failed to do so here by failing to properly direct the conduct of his subordinates, failing to enforce proscriptions against the use of excessive force and/or failing to stop his subordinates' excessive use of force despite knowing or reasonably constructively knowing that the SCPD Individual Defendants presented an excessive risk of harm to Mr. Foster and knowing that the SCPD Individual Defendants were inflicting excessive force on Mr. Foster.

240.    At all relevant times, Sergeant Schmeckpeper had a legal duty to adequately supervise all SCPD Individual Defendants.  He failed to do so here by failing to properly direct the conduct of his subordinates, failing to enforce their responsibility to attend to a restrained person's serious medical needs, despite knowing or reasonably constructively knowing that the SCPD Individual Defendants presented an excessive risk of harm to Mr.

Foster and knowing that the SCPD Individual Defendants were failing to attend to a restrained person's serious medical needs.

241.     Sergeant Schmeckpeper's supervisory failures and deliberate indifference to Mr. Foster's and Plaintiffs' constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

**Count XII**

**Supervisory Liability Pursuant to 42 U.S.C. § 1983**

**The Estate of James Foster against Jim Haden, in his individual capacity**

242.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

243.     Defendant Jim Haden, in his individual capacity, was the medical director of EMS when the SCFR Individual Defendants subjected Mr. Foster to excessive force and acted with deliberate indifference to his serious medical needs.

244.     Defendant Jim Haden possessed supervisory authority over SCFR Individual Defendants.

245.     As EMS Director, Defendant Haden, upon information and belief, set policy and established standard operating procedures for Sioux City Fire Rescue on behalf of the City of Sioux City.

246.     Defendant Haden established and maintained a policy, practice, and/or custom which directly caused the violations of Mr. Foster's constitutional rights.

247.     The policy, practice, and/or custom was enacted and maintained with deliberate indifference to the consequences thereof and the foreseeable violations of constitutional protections.

46

248.     At all relevant times, Jim Haden had a legal duty to adequately supervise all SCFR Individual Defendants. He failed to do so here by failing to properly train the SCFR Individual Defendants, failing to properly create and enforce constitutionally adequate policies and procedures, and to monitor compliance with these protocols despite knowing or reasonably constructively knowing that the SCFR Individual Defendants presented an excessive risk of harm to Mr. Foster.

249.     The SCFR Individual Defendants were acting in accordance with the policy, practice and custom established by Mr. Haden with his approval and sanction.

250.     The policy, practice, and custom established by Defendant Haden created an unreasonable risk of excessive force and deliberate indifference to serious medical needs in violation of the Fourth Amendment of the Constitution of the United States and the Fourteenth Amendment of the Constitution of the United States.

251.     Defendant was aware the policy, practice and/or custom created such unreasonable risk and that the unreasonable risk of constitutional violations existed at all relevant times herein.

252.     Despite the knowledge of this unreasonable risk, Defendant Haden was deliberately indifferent to that risk, maintained the existing policy and encouraged the use of excessive force and deliberate indifference to serious medical needs.

253.     The violations of Mr. Foster's constitutional rights by the SCFR Individual Defendants were the direct and proximate result of the failures of Defendant Haden to adopt, implement, and enforce a sedation policy that would prohibit these violations.

254.     Jim Haden's supervisory failures and deliberate indifference to Mr. Foster's and

Plaintiffs' constitutional rights caused Mr. Foster's death and Plaintiffs' substantial

damages.

## Count XIII

### Supervisory Liability Pursuant to 42 U.S.C. § 1983

**The Estate of James Foster against Randall Wood, M.D., in his individual capacity**

255.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set

forth herein.

256.     Defendant Randall Wood, M.D., in his individual capacity, was the medical

director of Sioux City Fire Rescue when the SCFR Individual Defendants subjected Mr.

Foster to excessive force and acted with deliberate indifference to his serious medical

needs.

257.     Defendant Randall Wood, M.D. possessed supervisory authority over SCFR

Individual Defendants.

258.     As SCFR Medical Director, Defendant Randall Wood, M.D., upon information

and belief, set policy and established standard operating procedures for Sioux City Fire

Rescue on behalf of the City of Sioux City.

259.     Defendant Randall Wood, M.D. established and maintained a policy, practice,

and/or custom which directly caused the violations of Mr. Foster's constitutional rights.

260.     The policy, practice, and/or custom was enacted and maintained with deliberate

indifference to the consequences thereof and the foreseeable violations of constitutional

protections.

261.     At all relevant times, Randall Wood, M.D. had a legal duty to adequately

supervise all SCFR Individual Defendants.  He failed to do so here by failing to properly

48

train the SCFR Individual Defendants, failing to properly create and enforce constitutionally adequate policies and procedures, and to monitor compliance with these protocols despite knowing or reasonably constructively knowing that the SCFR Individual Defendants presented an excessive risk of harm to Mr. Foster.

262.    The SCFR Individual Defendants were acting in accordance with the policy, practice and custom established by Randall Wood, M.D. with his approval and sanction.

263.    The policy, practice, and custom established by Defendant Randall Wood, M.D. created an unreasonable risk of excessive force and deliberate indifference to serious medical needs in violation of the Fourth Amendment of the Constitution of the United States and the Fourteenth Amendment of the Constitution of the United States.

264.    Defendant Randall Wood, M.D. was aware the policy, practice and/or custom created such unreasonable risk and that the unreasonable risk of constitutional violations existed at all relevant times herein.

265.    Despite the knowledge of this unreasonable risk, Defendant Randall Wood, M.D. was deliberately indifferent to that risk, maintained the existing policy and encouraged the use of excessive force and deliberate indifference to serious medical needs.

266.    The violations of Mr. Foster's constitutional rights by the SCFR Individual Defendants were the direct and proximate result of the failures of Defendant Randall Wood, M.D.'s failure to adopt, implement, and enforce a sedation policy that would prohibit these violations.

267.    Defendant Randall Wood, M.D.'s supervisory failures and deliberate indifference to Mr. Foster's and Plaintiffs' constitutional rights caused Mr. Foster's death and Plaintiffs' substantial damages.

49

**Count XIV**

**Iowa State Law - Iowa Code § 633.336**

**Medical Malpractice Wrongful Death**

**Plaintiffs against Defendants Deanna LaMere, Drake Carnahan, Dustin L. Johnson, Brandon R. DeRocher, and Jordan Reinders**

268.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

269.     Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders undertook the medical care and treatment of Mr. Foster on August 18, 2023.

270.     Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders were not part of an emergency response on August 18, 2023 nor were their acts and omissions part of an emergency response.  They were present with Mr. Foster due to a report of a man in the street who reported he had hurt his arm.

271.     Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders did not use lights and sirens to drive to where Mr. Foster was.

272.     Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders owed a duty to Mr. Foster to exercise the degree of reasonable care and skill exercised by like healthcare professionals of good standing under the same or similar circumstances while treating Mr. Foster.

273.     At all times material hereto, and at the time of all violations and negligent acts and omissions alleged herein, the law was clearly established that the Defendants owed a duty to use the degree of care, skill, and learning ordinarily possessed and exercised by

50

other medically trained professionals in similar circumstances. *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 17 (Iowa 2019) (citing *Speed v. State*, 240 N.W.2d 901, 904 (Iowa 1976).

274.     All reasonable healthcare providers in the shoes of these Defendants would be actually or constructively aware of their clearly established duty to provide medical care that met the standard of care.

275.     Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders breached their duties to Mr. Foster by falling below the standard of care in their care and treatment of him when they failed to exercise the degree of reasonable care and skill exercised by like healthcare professionals of good standing under the same or similar circumstances.

276.     Paramedic Deanna LaMere, EMT Drake Carnahan, EMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders fell below the standard of care and were negligent and/or grossly negligent and also acted with willful and wanton disregard of probable harmful consequences in their care and treatment of Mr. Foster in the following ways:

   a.   Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to appropriately manage Mr. Foster's agitation and disorientation.

   b.   Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to assess Mr. Foster both before and after he was injected with medication.  There was never an assessment done in order to determine if a chemically restraining injection was appropriate.

c. Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to assess Mr. Foster's arm – the reason for their presence at the scene.

d. Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders injected Mr. Foster with a chemical restraint against his will and without his consent.

e. Paramedic Deanna LaMere failed to verify the medication she injected into Mr. Foster before doing so.

f. Paramedic Deanna LaMere injected the wrong medication into Mr. Foster.

g. Paramedic Deanna LaMere failed to timely act to protect Mr. Foster's airway.

h. Paramedic Deanna LaMere lied to medical providers regarding what she had injected, endangering him further.

i. Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to timely recognize Mr. Foster's respiratory distress.

j. Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to properly respond to Mr. Foster's respiratory distress while at the scene.

k. Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to protect Mr. Foster's airway while at the scene.

l.   Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders failed to ever take Mr. Foster's vitals at the scene.

m.   Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders otherwise failed to exercise the ordinary care and skill in keeping with their profession, and in the areas of the profession in which they specialized, and in the manner in which they diagnosed, cared for, treated, and otherwise rendered care to Mr. Foster.

277.   As a direct and proximate result of the negligence and/or gross negligence of Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders, Mr. Foster died.

278.   Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders acted with a willful and wanton disregard of the rights of Mr. Foster. They knew patients who are chemically sedated (with any injection) require close monitoring and that chemical restraint can cause serious injury and death. In spite of this knowledge, they failed to carefully monitor Mr. Foster on-scene or to evaluate him in any way after he was injected while on-scene. They ignored known and obvious risks that were so great as to make it highly probable that harm would result by failing to address Mr. Foster's obvious respiratory distress and statements that he felt like he was dying.

279.   Defendant Paramedic Deanna LaMere acted with willful and wanton disregard for the rights of Mr. Foster. She knew that Mr. Foster had been injected with Rocuronium and needed further assistance and took no action and reported it to no one. She ignored

known and obvious risks that were so great as to make it highly probable that harm would result by failing to inform her team or the receiving hospital of the contents of her injection, and failing to provide care that would save his life even though she knew what she had done had endangered his life.

280.     As a direct and proximate result of the negligence and/or gross negligence, and recklessness and the willful and wanton disregard of the rights of Mr. Foster of Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders, Mr. Foster and his Estate incurred all damages allowable under Iowa law for wrongful death, including, but not limited to, interest on funeral and burial expenses, lost accumulation to the estate of Mr. Foster, loss of support and consortium for Jennifer L. Foster, individually, James Joseph Foster, Sr., and Kenzee Lambertson as next friend on behalf of her minor children P. F. and L.F., pre-death pain and suffering of Mr. Foster, allowable medical expenses, punitive damages and further damages to be determined and disclosed during discovery.

## Count XV
### Iowa State Law - Iowa Code § 633.336
### Medical Malpractice Wrongful Death Vicarious Liability
### Plaintiffs against Defendants City of Sioux City and Sioux City Fire Rescue

281.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

282.     Defendants City of Sioux City and Sioux City Fire Rescue, by and through its nurses, physicians, other healthcare providers and/or its actual, ostensible and/or apparent agents, servants and/or employees, including, but not limited to, Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R.

DeRocher, and Jordan Reinders, undertook the medical care and treatment of Mr. Foster at all times relevant to the claims made against Defendants herein.

283. Defendants City of Sioux City and Sioux City Fire Rescue either employed Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, EMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders, or had an agency relationship with them at the time of their care and treatment of Mr. Foster.

284. Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders breached the standard of care in their care and treatment of Mr. Foster, as described in this Petition.

285. Defendants City of Sioux City and Sioux City Fire Rescue is therefore vicariously liable for Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders's negligence and gross negligence.

286. As a direct and proximate result of the negligence and/or gross negligence of Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders, for which Defendants City of Sioux City and Sioux City Fire Rescue are vicariously liable, Mr. Foster died.

287. At all times material hereto, and at the time of all violations and negligent acts and omissions alleged herein, the law was clearly established that, under the doctrine of vicarious liability or respondeat superior, a party is liable for the actions of its employees or agents who are acting within the scope of that employment. *Wobers v. Finley Hospital*, 673 N.W.2d 728, 734 (Iowa 2003); Iowa Code § 670.2.

288.     Defendants City of Sioux City and Sioux City Fire Rescue, by and through its nurses, physicians, other healthcare providers and/or its actual, ostensible and/or apparent agents, servants and/or employees, including, but not limited to, Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders caused Plaintiffs to sustain injuries as described throughout this Complaint.

289.     Defendants City of Sioux City and Sioux City Fire Rescue, by and through its nurses, physicians, other healthcare providers and/or its actual, ostensible and/or apparent agents, servants and/or employees, including, but not limited to, Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders, Mr. Foster and his Estate incurred all damages allowable under Iowa law for wrongful death, including, but not limited to, interest on funeral and burial expenses, lost accumulation to the estate of Mr. Foster, loss of support and consortium for Jennifer L. Foster, individually, James Joseph Foster, Sr., individually, and Kenzee Lambertson as next friend on behalf of her minor children P. F. and L.F., pre-death pain and suffering of Mr. Foster, allowable medical expenses, punitive damages and further damages to be determined and disclosed during discovery.

**Count XVI**

**Iowa State Law**

**Negligent Hiring, Retention and Supervision**

**Plaintiffs against Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D.**

290.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

291.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D. knew, or in the exercise of ordinary care should have known of Paramedic Deanna LaMere's unfitness at the time of her hiring.

292.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D. retained Paramedic Deanna LaMere after they knew, or in the exercise of ordinary care should have known, of Deanna LaMere's unfitness.

293.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D. knew that Paramedic Deanna LaMere, upon information and belief, had on previous occasions injured patients in circumstances similar to those in which she caused Mr. Foster's death and they retained her despite this knowledge.

294.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D. were negligent in their supervision of Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders by failing to properly train them in the use of chemical restraints and patients in respiratory distress.

295.    Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall Wood, M.D.'s negligent hiring, retention and supervision of Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders allowed their incompetence, unfitness and/or dangerous characteristics to proximately cause injury to Mr. Foster and his Estate.

296.    There was an employee or agency relationship between Defendants Paramedic Deanna LaMere, EMT Drake Carnahan, AEMT Dustin L. Johnson, EMT Brandon R.

57

DeRocher, and Jordan Reinders and Defendants City of Sioux City, Sioux City Fire
Rescue, Jim Haden and Randall Wood, M.D.

297.     At all times material hereto, and at the time of all violations and negligent acts
and omissions alleged herein, the law was clearly established that an employer may be
liable for negligent hiring, retention and supervision if 1) the employer knew, or in the
exercise of ordinary care should have known, of its employees' unfitness at the time of
hiring; 2) through the negligent hiring, retention and supervision of the employees, the
employees' incompetence, unfitness or dangerous characteristics the Plaintiffs were
injured; and 3) there is an employment or agency relationship between the tortfeasor and
the Defendant employer. *Godar v. Edwards*, 588 N.W.2d 707, 708-709 (Iowa 1976).

298.     Defendants City of Sioux City, Sioux City Fire Rescue, Jim Haden and Randall
Wood, M.D.'s negligent hiring, retention and supervision of Defendant Paramedic
Deanna LaMere, and negligent supervision and training of EMT Drake Carnahan, AEMT
Dustin L. Johnson, EMT Brandon R. DeRocher, and Jordan Reinders allowed their
incompetence, unfitness and/or dangerous characteristics to proximately cause injury to
Mr. Foster and his Estate.

299.     As a result of the Defendants' negligence, gross negligence and recklessness, Mr.
Foster and his Estate incurred all damages allowable under Iowa law for wrongful death,
including, but not limited to, interest on funeral and burial expenses, lost accumulation to
the estate of Mr. Foster, loss of support and consortium for Jennifer L. Foster,
individually and James Joseph Foster, Sr., individually, and Kenzee Lambertson as next
friend on behalf of her minor children P. F. and L.F., pre-death pain and suffering of Mr.

Foster, allowable medical expenses, punitive damages and further damages to be determined and disclosed during discovery.

## Count XVII

### Attorney Fees and Costs of Litigation

### Pursuant to 42 U.S.C. § 1988

### As to Defendants Pursuant to 42 U.S.C § 1983

300.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

301.     Pursuant to 42 U.S.C. § 1988, Plaintiffs seek an award of reasonable attorney fees and costs of litigation in an amount to be determined by the Court at the conclusion of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against each of the Defendants, and grant them all relief as allowed by law, including, but not limited to:

1. Past and future economic losses on all claims allowed by law, including but not limited to lost earnings and funeral and medical related expenses, in an amount to be determined at trial;

2. Compensatory and consequential damages, including but not limited to, damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

3. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

59

4. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

5. Pre- and post-judgment interest at the lawful rate;

6. All damages allowable under Iowa law for wrongful death, including, but not limited to, interest on funeral and burial expenses, lost accumulation to the estate of Mr. Foster, loss of support and consortium for Jennifer L. Foster, individually, James Foster, Sr., individually and Kenzee Lambertson as next friend on behalf of her minor children P. F. and L.F., pre-death pain and suffering of Mr. Foster, allowable medical expenses, punitive damages and further damages to be determined and disclosed during discovery

7. Any further relief that this court deems just and proper and any other relief as allowed by law.

Dated this 16th day of May, 2025.

        ***/s/ Erin E. Jordan***
        Erin E. Jordan
        Katie M. Naset
        HOPE LAW FIRM &
        ASSOCIATES, PC
        5022 Grand Ridge Drive
        West Des Moines, Iowa 50265
        Telephone: (515) 255-3559
        Facsimile: (515) 243-2433
        Email: erin.jordan@hopelawfirm.com
        Email: katie@hopelawfirm.com
        **ATTORNEYS FOR PLAINTIFFS**