# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| JENNIFER L. FOSTER, individually and as Administrator of the estate of James Joseph Foster, Jr., KENZEE LAMBERTSON as next friend of P.F. and L.F., and JAMES JOSEPH FOSTER, SR., | No. 25-CV-4024-CJW-MAR |
| Plaintiffs, | **ORDER** |
| vs. | |
| CITY OF SIOUX CITY, IOWA, CAROLINA OCHOA, ALAN SCHMECKPEPER, DEANNA LA MERE, DRAKE CARNAHAN, DUSTIN L. JOHNSON, BRANDON R. DEROCHER, JORDAN REINDERS, JIM HADEN, and RANDALL WOOD, M.D., | |
| Defendants. | |

---

## TABLE OF CONTENTS

I.      FACTUAL SUMMARY ................................................................... 3

II.     STANDARD UNDER FEDERAL RULE OF
         CIVIL PROCEDURE 12(B)(6) ...................................................... 6

III.    ANALYSIS.................................................................................. 7

      A.    Official Capacity Claims—Duplicative ........................................ 8

      B.    *Monell* Claims Against the City (Counts 5–10) ............................... 9

1.   Unofficial Custom Claims—Counts 6 and 10 ........................10

     a.   Count 6.................................................................11

     b.   Count 10 ..............................................................15

2.   Failure to Train or Supervise—Counts 5, 7, 8, & 9 ................17

     a.   Count 5.................................................................18

     b.   Count 7.................................................................20

     c.   Count 8.................................................................23

     d.   Count 9.................................................................25

3.   Supervisory Liability—Counts 12 & 13..............................26

IV.   CONCLUSION .................................................................27

2

This matter is before the Court on the City of Sioux City, Alan Schmeckpeper, Jim Haden, and Randall Wood's (collectively "defendants") partial motion to dismiss. (Doc. 23). Plaintiffs filed a resistance. (Doc. 30).

On January 9, 2026, the Court heard oral argument on the motion. (Doc. 45).

For the following reasons, defendants' partial motion to dismiss is **granted**.

## I. FACTUAL SUMMARY[1]

On August 18, 2023, just before 4:00 AM, defendant Carolina Ochoa, a Sioux City police officer, responded to a report of an individual sitting or lying in the street. (Doc. 2, at 6). At 3:53 AM, Ochoa encountered James Foster, Jr. ("Foster") sitting or lying near the curb. (*Id.*). Ochoa parked her car and asked how she could help him, to which Foster replied that he had hurt his arm. (*Id.*). Ochoa radioed for medical assistance. (*Id.*). Foster had his hands up and appeared confused and disoriented, and when Ochoa attempted to assist Foster in moving from his position, Foster "reacted in fright, moving away from her." (*Id.*).

Several of the other emergency responders arrived a few minutes after Ochoa radioed for assistance. (*Id.*, at 7). Specifically, defendants Sergeant Alan Schmeckpeper (patrol supervisor), Deanna LaMere[2] (Paramedic), Drake Carnahan (EMT), Dustin Johnson (AEMT), Brandon DeRocher (EMT), and Jordan Reinders (EMT) arrived at the scene. (*Id.*). The defendants on scene—mainly Ochoa, LaMere, and Schmeckpeper—asked Foster questions about his physical and mental state, including whether Foster was on drugs, whether he was schizophrenic, and whether there was anything the medical

---

[1] The facts are taken from plaintiffs' amended complaint, the operative pleading. (Doc. 2). Of course, these are only allegations made by plaintiffs at this stage.

[2] In the case caption, the parties spell it La Mere, but in all the other materials the parties spell her last name LaMere. The Court will follow the parties' lead and spell it LaMere.

team could do for him.  (*Id.*, at 7–8).  Foster answered no to whether there was anything the medical team could do for him.  (*Id.*, at 8).

Foster then reported that his arm hurt.  (*Id.*).  Foster was laying on the ground at this point with his arms behind him.  (*Id.*).  Ochoa again tried unsuccessfully to help Foster to his feet, but Foster said that he was experiencing pain and agreed to accept medical assistance.  (*Id.*).  LaMere then said to Foster: "Let's get up and go to the ambulance," to which Foster responded, "I can't."  (*Id.*).  When defendants told Foster that he could get to the ambulance and that they would help him, he became frightened and started to cry.  (*Id.*).  Foster apparently began scooting on his hands and knees.  (*Id.*).  Defendants rolled a gurney next to Foster, and Foster moved away in fear, continuing to act disoriented.  (*Id.*).  Foster then stood up and tried to walk but fell.  (*Id.*, at 9).  Several defendants stated that for about five minutes, Foster was calm and lying peacefully on the ground.  (*Id.*).  After approximately five-minutes, Foster again unsuccessfully tried to stand.  (*Id.*).

LaMere went to her emergency response vehicle and returned with a syringe. (*Id.*).  Multiple defendants forcibly held Foster down against his will.  (*Id.*).  LaMere asked one of the other defendants on scene to verify the medication in the syringe was correct even though the other on-scene defendant did not witness LaMere drawing up the medication.  (*Id.*).  LaMere announced that she was injecting Foster with ketamine to chemically restrain him.  (*Id.*).

LaMere had mistakenly filled the syringe with rocuronium instead of ketamine. (*Id.*).  Rocuronium is "a powerful and dangerous paralytic agent used in intubation procedures[.]" (*Id.*).  When LaMere injected Foster around 4:08 AM, then, it was with rocuronium, and not ketamine.  Foster asked if the injection would kill him and said it was causing him pain, and later said again that he was afraid defendants were trying to

4

kill him. (*Id.*, at 10). Defendants told Foster that he was fine, and the injection would help him relax. (*Id.*).

Plaintiffs allege that there were "numerous other options other than chemical restraint" for Foster, which were not implemented and were not considered by any of the defendants on scene. (*Id.*).

At 4:09 AM, defendants moved Foster to the gurney. (*Id.*). At 4:10 AM, defendants handcuffed Foster, who immediately began to struggle to breathe, "audibly gasping for air and asking 'Am I gonna die?'" (*Id.*). Foster repeatedly cried "I can't breathe." (*Id.*). Foster's breathing deteriorated and became labored, as he was audibly and visibly gasping and wheezing. (*Id.*). None of the defendants on scene checked to see if Foster was in medical distress or needed medical attention. (*Id.*).

At some point between when she injected Foster at 4:08 AM and 4:11 AM, LaMere discovered that she had injected Foster with a lethal dose of rocuronium, and she knew that he needed immediate medical attention to survive. (*Id.*, at 11). LaMere did not inform anybody of her error at that moment, and she did not take any action to prevent Foster from going into cardiac arrest. (*Id.*). Foster's condition was such that, even without any warning from LaMere, it was apparent that he needed medical attention. (*Id.*). When Foster again stated that he was dying, Schmeckpeper responded: "You're not gonna die, you're fine." (*Id.*).

At 4:13 AM, Foster stopped moving with his eyes open lying motionless. (*Id.*). LaMere told the police officers to take Foster's handcuffs off. (*Id.*, at 12). Foster's breathing worsened in the ambulance and defendants applied oxygen and an "oropharyngeal airway." (*Id.*).

After the ambulance left the scene, Schmeckpeper exclaimed "teamwork!" (*Id.*).

At 4:14 AM, Foster was ventilated by bag valve mask. (*Id.*).

5

At 4:18 AM, Foster's heart stopped and Reinders performed CPR on Foster. (*Id.*).

At 4:21 AM, Foster was given epinephrine, and a few minutes later was intubated. (*Id.*). LaMere called the hospital while the ambulance was on the way and reported Foster's condition. LaMere told the hospital that Foster had received ketamine. (*Id.*).

When Foster arrived at the hospital, LaMere informed medical personnel that she had injected Foster with rocuronium. (*Id.*). LaMere then improperly disposed of the vials of rocuronium and ketamine in a "sharps container in contravention of Sioux City Fire Rescue's policies and procedures and/or protocols." (*Id.*).

Foster died two days later at Mercy Medical Center Sioux City from cardiac arrest and brain death resulting from the rocuronium injection. (*Id.*).

## II.  STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys,*

*Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (first alteration in original). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The Court must also grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *2 (N.D. Iowa Sept. 21, 2023) (quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney*, 700 F.3d at 1129.

## III.   ANALYSIS

Plaintiffs bring seventeen claims in their amended complaint. (Doc. 2, at 13–59). Most of the claims are brought by the Estate of Foster, but several are state law claims brought by all plaintiffs. (*See id.*). All the claims at issue in this order are brought by the Estate of Foster, so the Court will refer to Estate of Foster as "plaintiff" for the remainder of this order.

Defendants the City of Sioux City ("the City"), Schmeckpeper, Haden, and Wood move to dismiss some of plaintiff's claims. (Doc. 23). Specifically, defendants move to

7

dismiss the following claims, each of which plaintiff brings under Title 42, United States Code, Section 1983:

- Count 5: *Monell* Liability for Failure to Supervise (against the City and Schmeckpeper in his official capacity);

- Count 6: *Monell* Liability for Informal Custom (against the City and Schmeckpeper in his official capacity);

- Count 7: *Monell* Liability for Failure to Train (against the City, Haden in his official capacity, and Wood in his official capacity);

- Count 8: *Monell* Liability for Failure to Screen, Investigate and Discipline (against the City, Haden in his official capacity, and Wood in his official capacity);

- Count 9: *Monell* Liability for Failure to Supervise (against the City, Haden in his official capacity, and Wood in his official capacity);

- Count 10: *Monell* Liability for Informal Custom (against the City, Haden in his official capacity, and Wood in his official capacity);

- Count 12: Supervisory Liability Pursuant to 42 U.S.C. § 1983 (against Haden in his individual capacity); and

- Count 13: Supervisory Liability Pursuant to 42 U.S.C. § 1983 (against Wood in his individual capacity).

### A.    *Official Capacity Claims—Duplicative*

In Counts 5, 6, 7, 8, 9, and 10, plaintiff brings its claims against the City and against other defendants in their official capacity.  Specifically, in addition to bringing the claims against the City, plaintiff brings Counts 5 and 6 against Schmeckpeper in his official capacity and brings Counts 7–10 against Haden and Wood in their official capacities.

Defendants argue, and the Court agrees, that the Court should dismiss these claims as against Schmeckpeper, Haden, and Wood in their respective official capacities as

8

redundant of the same claims against the City. (Doc. 23-1, at 7). "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). When a plaintiff brings a claim against both the employing governmental entity and a government officer in their official capacity, courts may dismiss the official capacity claim against the government officer "as redundant of the claim against the" employing governmental entity. *Id.*; *see also Hotchkiss*, 2023 WL 6163487, at *9–10 (dismissing a plaintiff's official capacity claims in a similar context because they were "redundant and duplicative of the claims" against the municipal entity).

Here, Schmeckpeper, Haden, and Wood were all employed by the City. (Doc. 2, at 5–6). The City was therefore the employing governmental entity. Plaintiff brought these claims against both the City and the government officers in their official capacities. In line with Eighth Circuit precedent, then, plaintiff's claims against Schmeckpeper (Counts 5 and 6) and Haden and Wood (Counts 7, 8, 9, and 10) in their official capacities are redundant of the same claims against the City and therefore must be dismissed as against Schmeckpeper, Haden, and Wood.

Thus, defendants' motion to dismiss is **granted** as to plaintiff's Counts 5 and 6 against Schmeckpeper in his official capacity. Defendants' motion to dismiss is also **granted** as to plaintiff's Counts 7, 8, 9, and 10 against Haden and Wood in their official capacities.

### B. Monell *Claims Against the City (Counts 5–10)*

Plaintiff brings Counts 5–10 under Title 42, United States Code, Section 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

9

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. The *Monell* Court further held that municipalities may also be "sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. On the other hand, the *Monell* Court specifically instructed that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

The Eighth Circuit has explained that there are three bases for municipal liability for a *Monell* claim. "A municipality may only be liable for a constitutional violation resulting from (1) an 'official municipal policy,' (2) an 'unofficial custom,' or (3) 'failure to train or supervise.'" *Poemoceah v. Morton Cnty.*, 117 F.4th 1049, 1057 (8th Cir. 2024) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)). Plaintiff brings this set of claims—Counts 5 through 10—under the second and third theories: unofficial custom and failure to train and supervise.

### 1. *Unofficial Custom Claims—Counts 6 and 10*

Plaintiff brings two of the claims at issue—Counts 6 and 10—as "unofficial custom" claims. To survive defendants' motion to dismiss these claims, plaintiff must plead facts showing

10

(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom.

*Id.* (cleaned up).[3]  The theory underlying liability for a non-formally approved municipal custom is that "the relevant practice is so widespread as to have the force of law." *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019).

### a. Count 6

In Count 6, plaintiff claims the City's custom of "inappropriate (intended) use of Ketamine for law enforcement purposes; and the failure to take any action to assist a restrained individual with obvious and serious medical needs after his injection" caused a deprivation of Foster's constitutional rights.  (Doc. 2, at 30).  As for the constitutional rights plaintiff bases its claim upon, it mentions Foster's constitutional rights "to be free from excessive force" and "to have his serious medical needs addressed[.]"  (*Id.*, at 32).

Defendants challenge plaintiff's factual allegations supporting Count 6 under the first two prongs of the informal custom test.  Defendants first argue that plaintiff fails to allege facts suggesting that a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" existed.  (Doc. 23-1, at 10).  Defendants next argue that plaintiff does not "plead any specific facts to establish or from which to infer that policymaking officials had notice of any specific misconduct constituting an unofficial custom."  (*Id.*, at 11).  Defendants thus argue that plaintiff has not plead facts showing a widespread persistent pattern of unconstitutional

---

[3] The Court intentionally uses (cleaned up), as opposed to the Bluebook's contrary guidance in the latest edition to instead use (citation modified).  The Court does so for the reasons explained by Judge Langholz in *State v. Landrum*, No. 24-2020, 2025 WL 3022865, at *3–6 (Iowa Ct. App. Oct. 29, 2025) (Langholz, J., concurring specially).

misconduct by the City's employees, and even if plaintiff did allege such facts, it has not alleged that the City's officials had knowledge of such misconduct, which means the officials could not have authorized the conduct or have been deliberately indifferent to such conduct.

Plaintiff points to three "facts" from its complaint in support of its argument resisting defendants' motion to dismiss Count 6, including:

> 1. There was a widespread custom, habit[,] informal policy and/or practice of unlawful conduct including the inappropriate (intended) use of Ketamine for law enforcement purposes; and the failure to take any action to assist a restrained individual with obvious and serious medical needs after his injection.

> 2. The [City's] violations of Mr. Foster's rights evidence a culture of deliberate indifference as two members of the police department, including a supervisor, acted in the same manner, without expressing any concern that Mr. Foster was dying or that his rights were being violated.

> 3. Sergeant Schmeckpeper exclaimed "teamwork" after Mr. Foster was taken away in an ambulance nearly dead, illustrating that the encounter went as they expected, and was business as usual.

(Doc. 30, at 13) (citing Doc. 2, at 30–31). Plaintiff quotes almost directly from the complaint in the first and third points, and the second point is a fair summarization of the allegations within plaintiff's Count 6, although not a direct quote.

Plaintiff argues, based on the three quoted points in the complaint and others, that "it is plausible that the culpable Defendants acted in accordance with the City['s] . . . continuing, widespread, persistent pattern of unconstitutional misconduct of its employees and that the City . . . and Sergeant Schmeckpeper acted with deliberate indifference to this misconduct." (*Id.*). Finally, plaintiff states that the "police body cam video footage clearly shows that Serge[a]nt Schmeckpeper and Officer Ochoa were acting in accordance with their normal custom and practice." (*Id.*, at 13–14).

The first issue is whether plaintiff has alleged facts establishing "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees. *Poemoceah*, 117 F.4th at 1057. The alleged unconstitutional misconduct plaintiff points to here is apparently the City's employees' intended use of ketamine and their failure to take action to assist a restrained person who has obvious and serious medical needs. (Doc. 30, at 13). So, the specific issue under this element is whether plaintiff has pled facts which could plausibly lead one to conclude that the City's employees had a custom of inappropriately using ketamine for law enforcement purposes or a custom of failing to assist restrained individuals with obvious and serious medical needs.

Plaintiff's factual allegations fall short of plausibly establishing that the City had such customs. Plaintiff alleges LaMere injected Foster with what she thought at the time was ketamine in order to chemically restrain him. Plaintiff does not make any other factual allegations about the City's employees' use of ketamine. Plaintiff makes other conclusory allegations about how defendants acted in accordance with their custom of injecting ketamine for law enforcement purposes. For example, plaintiff alleges that the City deprived Foster of his constitutional rights in accordance with the City's "informal policy and/or practice of unlawful conduct including: the inappropriate (intended) use of Ketamine for law enforcement purposes[.]" (Doc. 2, at 30). But plaintiff makes no other *factual* allegations showing such a pattern. There are certainly no other factual allegations establishing a "continuing, widespread, persistent pattern" as is required for plaintiff to state a claim here. Simply put, one instance of behavior cannot establish a pattern.

Indeed, in *Poemoceah*, the Eighth Circuit held that the plaintiff's *Monell* claim that the defendants had an informal custom of using excessive force failed on this element when, "[o]utside of his own experience, [the plaintiff did] not point to specific instances where protestors were subject to excessive force by officers" under the relevant

13

defendants' supervision.  117 F.4th at 1057.  Similarly, here, plaintiff fails to allege any facts, as opposed to conclusory statements of law, establishing that the City's employees had a pattern of conduct of using ketamine for law enforcement purposes.  Thus, plaintiff's allegations fail on the first element of an informal custom claim regarding the use of ketamine.

So too regarding plaintiff's claim that the City's employees had a custom of failing to "take any action to assist a restrained individual with obvious and serious medical needs after his injection." (Doc. 30, at 13).  Plaintiff makes factual allegations regarding the City's employees' failure to medically assist Foster after his injection.  But, again, one instance does not establish a continuing, widespread, persistent pattern.  *See Poemoceah*, 117 F.4th at 1057.  Plaintiff does not allege any facts outside of Foster's experience about the City's employees' failure to take action to assist restrained individuals with medical needs after an injection.  Thus, plaintiff's allegations also fall short on the first element of an informal custom claim regarding defendants' failure to assist restrained individuals who need medical attention.

Defendants also challenge plaintiff's allegations on the second element of an informal custom claim: whether there was "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct." *Id.* (cleaned up).  If plaintiff has not alleged facts showing a continuing pattern of conduct by the City's employees, then plaintiff cannot have alleged deliberate indifference to or authorization of the conduct by the City's officials.  Plaintiff has not alleged a pattern of conduct.  Plaintiff, therefore, could not have alleged that the City's officials were notified of such pattern of conduct.  Plaintiff's allegations fail on the second element of an informal custom claim as well.

Thus, defendants' motion to dismiss is **granted** as to plaintiff's Count 6.

14

### b. Count 10

In Count 10, plaintiff makes a *Monell* claim against the City based upon an informal custom theory. (Doc. 2, at 41–45). The customs to which plaintiff points in Count 10 are:

> the inappropriate (intended) use of chemical restraints for law enforcement purposes; the failure to take any action to assist a patient with obvious and serious medical needs after his chemical restraint, failures to properly assess patients, failure to monitor chemically restrained patients, informal policy of covering-up errors to the detriment of patients, an informal policy procedure and protocol that allowed for two medications to be confused, and custom and practice of false verifications of medication and dose by second EMT or paramedic.

(*Id.*, at 41–42).

The parties assert similar arguments under plaintiff's Count 10 as they do under plaintiff's Count 6. Defendants argue that plaintiff failed to allege facts of prior incidents which could establish a pattern of unconstitutional misconduct. (Doc. 23-1, at 12–14). Thus, according to defendants, plaintiff's informal custom claim fails under the first element of the claim. Plaintiff again points to several allegations in its complaint, most of which are conclusory legal statements and not true allegations of fact, and argues that these allegations show a pattern of unconstitutional misconduct by defendants. (Doc. 30, at 19–21).

The primary issue is whether plaintiff has alleged facts establishing "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees. *Poemoceah*, 117 F.4th at 1057. Plaintiff points to the following as alleged patterns of unconstitutional misconduct: inappropriate intended use of chemical restraints for law enforcement purposes; failure to take action to assist a patient with obvious and serious medical needs after his chemical restraint; failure to properly assess patients; failure to monitor chemically restrained patients; covering up errors; protocol

15

which allowed medications to be confused; and false verifications of medication and dose by a second EMT or paramedic. (Doc. 2, at 41–42). But plaintiff again fails to plead facts showing that the City had any pattern of conduct regarding these issues.

Plaintiff's allegations here do not show a pattern because plaintiff fails to allege any facts other than those relating to Foster's situation. Plaintiff simply fails to allege even a second situation relating to any of the alleged patterns of behavior. As discussed above, for there to be a pattern of behavior, there needs to be *at least* two examples— and probably more. Here, there is only one example relating to the alleged custom. Plaintiff's Count 10 therefore fails for the same reason as Count 6 fails: plaintiff has not alleged a pattern of misconduct by the City or its employees.

Notably, plaintiff makes one additional allegation under Count 10, but it does not save plaintiff's claim. Plaintiff alleges that "LaMere had one or more incidents similar to the one at issue in this lawsuit that she was not properly disciplined, retrained or dismissed and her employment continued despite her pervious failures endangering multiple patients." (*Id.*, at 44). This is the type of allegation which might get closer to establishing a pattern of behavior by defendants, which is needed for an informal custom claim. But it does not clear that threshold here. It is not specific enough. How, for example, were the previous incidents similar to her treatment of Foster? When did they occur? Was she employed by the City of Sioux City at the time? The questions abound, and plaintiff alleges no facts which, taken as true, would establish a pattern of behavior by LaMere or other employees while employed by the City.

Elsewhere in the complaint, plaintiff alleges that LaMere had "multiple prior dangerous and injurious medication errors with patients in violation of their clearly established constitutional rights[.]" (*Id.*, at 37). This too does not get plaintiff over the line because it does not support the potential customs which plaintiff points to under Count 10. The customs plaintiff points to under this claim are: inappropriate intended

16

use of chemical restraints, failure to take action to assist a patient with obvious and serious medical needs after chemical restraint, failure to properly assess patients, failure to monitor chemically restrained patients, informal policy of covering up errors, informal procedures and protocols which allowed two medications to be confused, and false verifications of medication doses by a second EMT or paramedic. (Doc. 2, at 41–42). The only potential option which relates to plaintiff's allegation that LaMere had multiple prior medication errors would be plaintiff's claim of the City's informal procedures and protocols which allowed two medications to be confused. But the factual allegation— LaMere had medication errors previously—does not plausibly lead to the conclusion that the City had procedures and protocols which allowed medications to be confused. The factual allegation does not plausibly lead to the conclusion that the City had a continuing, widespread, persistent pattern of such procedures and protocols, as is required to state a claim here.

Thus, defendants' motion to dismiss is **granted** as to plaintiff's Count 10.

### 2.    *Failure to Train or Supervise—Counts 5, 7, 8, & 9*

Plaintiff brings four of its *Monell* claims under a failure to train or failure to supervise theory, with one claim stylized as failure to screen, investigate, and discipline. For its failure to supervise or train claims, plaintiff must plead facts showing "that the failure amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017) (cleaned up). The Eighth Circuit has explained the law underlying these claims:

> Deliberate indifference in this context "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). The issue is whether, "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can

17

reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *cf. Cash v. Cnty. of Erie*, 654 F.3d 324, 337 (2d Cir. 2011) (failure-to-supervise claim), *cert. denied*, 565 U.S. 1259 (2012). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted). "In resolving the issue of a city's liability, the focus must be on adequacy of the [supervision] in relation to the tasks the particular officers must perform." *Canton*, 489 U.S. at 390.

*S.M.*, 874 F.3d at 585 (cleaned up). Additionally, the plaintiff must show that the municipal action was the "moving force [behind] the constitutional violation." *Id.* (alteration in original).

### a. Count 5

In Count 5, plaintiff brings a failure to supervise claim against the City based upon Schmeckpeper's alleged failure to supervise the police officers. (Doc. 2, at 26–30). The crux of plaintiff's claim is that Schmeckpeper "was a patrol supervisor and Sergeant on site when the SCPD Individual Defendants subjected Mr. Foster to excessive force, failed to intervene and when they acted with deliberate indifference to his serious medical needs." (*Id.*, at 27). Plaintiff claims Schmeckpeper and the City "failed in their supervisory duties to prevent the SCPD Individual Defendants' violations of Mr. Foster's clearly established constitutional rights, with knowledge that they were acting in violation of his clearly established constitutional rights, constituting deliberate indifference to those constitutional rights." (*Id.*). Plaintiff also alleged the City and Schmeckpeper failed to supervise the individual police officers through improper monitoring the officers' "interactions with paramedics when using chemical restraints, by failing to monitor their compliance with policies and procedures and individuals' constitutional rights in a situation that these Defendants would repeatedly face—the chemical restraint of individuals encountered on patrol." (*Id.*, at 29).

18

Defendants argue the claim should be dismissed. Defendants argue that plaintiff must allege the supervisor received notice of a pattern of unconstitutional conduct committed by a subordinate, and that the supervisor was deliberately indifferent to the unconstitutional conduct. (Doc. 23-1, at 14). Defendants then argue plaintiff has not alleged a pattern of specific instances of prior unconstitutional conduct committed by Schmeckpeper's subordinates or that he had knowledge of such prior conduct. (*Id.*).

Plaintiff argues in response that it "properly pled Claim V as a single incident liability *Monell* claim by alleging that the Defendants failed to properly supervise officers and their interactions with paramedics when using chemical restraints and compliance with individuals' constitutional rights in a situation they would repeatedly face—the chemical restraint of individuals encountered on patrol." (Doc. 30, at 12). Plaintiff reasons that "[b]ased upon the facts pled in the Amended Complaint it is plausible that the City of Sioux City and Sergeant Schmeckpeper acted with deliberate indifference to Mr. Foster's constitutional rights by their failure to supervise officers who would be in nearly daily contact with agitated individuals and who would often be involved in situations in which chemical sedation was used." (*Id.*).

The only arguments before the Court, then, deal with whether plaintiff was required under this claim to allege a pattern of prior instances of unconstitutional conduct under the City's, and specifically under Schmeckpeper's, supervision. As plaintiff's argument suggests, there may be rare cases in which a plaintiff may show deliberate indifference by a defendant without showing a pattern of similar violations. In *Canton*, the Supreme Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (citing *Canton*, 489 U.S. at 390 n.10). The Court reasoned:

Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.

*Id.* at 63–64 (quoting *Brown*, 520 U.S. at 409). The general idea is that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

This claim is not one of the rare circumstances where single incident liability suffices. The Court has questions about the relationship between single incident liability and failure to supervise claims in general. But plaintiff has not shown why this claim is one of those extraordinary claims where it fits. Plaintiff was required to allege facts showing a pattern of unconstitutional conduct and did not do so.

Thus, defendants' motion to dismiss plaintiff's Count 5 is **granted**.

### b. *Count 7*

In Count 7, plaintiff asserts a failure to train claim against the City based on Haden and Wood's alleged failure to train the medical personnel. (Doc. 2, at 33–35). Haden was the EMS director of Sioux City Fire Rescue and Wood was the medical director of Sioux City Fire Rescue. (*Id.*, at 33). In support of its claim, plaintiff alleges Haden and Wood

failed in their duties to provide training to the SCFR Individual Defendants in order to prevent the SCFR Individual Defendants' violations of Mr. Foster's clearly established constitutional rights regarding the following: 1) assessing patients in the field; 2) determining whether chemical restraint has a medical rather than law enforcement purpose; 3) assessing patients after they are given powerful medications like Ketamine and Rocuronium; 4) properly and timely communicating errors that are made so that patients can receive the care they need with their team and the receiving hospital;

20

5) addressing medication overdoses; 6) responding to respiratory distress; 7) verification of medications on scene; 8) distinguishing Ketamine from Rocuronium; and 9) communicating accurately an adverse event to a receiving hospital.

(*Id.*, at 34). Plaintiff also alleges that it was obvious to the City that the "situation presented by Mr. Foster would recur frequently presenting the obvious potential for constitutional violations if proper training was not conducted such that a failure to train the SCFR Individual Defendants constituted deliberate indifference to Mr. Foster and the public's constitutional rights[.]" (*Id.*, at 35).

To state a viable failure to train claim against a municipality, a plaintiff must plead facts showing "(1) [the City's] officer-training practices were inadequate; (2) [the City] was deliberately indifferent to the rights of others in adopting these training practices, and [the City's] failure to train was a result of deliberate and conscious choices it made; and (3) [the City's] alleged training deficiencies caused [the plaintiff's] constitutional deprivation." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). "A failure to train is actionable under § 1983 if, in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Poemoceah*, 117 F.4th at 1057–58 (cleaned up).

Defendants first argue plaintiff's allegations are conclusory and are not supported by facts about fire and rescue training, how it compares with other entities' trainings, or a single specific instance of personnel inappropriately using ketamine, failing to act to assist a patient with a serious medical need, or improperly assessing a patient. (Doc. 23-1, at 16–17). Defendants presumably mean there are no instances of these behaviors excluding Foster's situation. Defendants also argue plaintiff's allegation that the situation

21

presented by Foster obviously would recur frequently is a formulaic statement without factual backing in the complaint. (*Id.*).

Plaintiff again argues it properly pleaded a *Monell* single incident liability claim. Plaintiff specifically points to its allegation that defendants "failed to properly train paramedics and EMTs when using chemical restraints and compliance with individuals' constitutional rights in a situation they would repeatedly face—the chemical restraint of individuals in conjunction with law enforcement." (Doc. 30, at 15). Plaintiff also points to its allegation that such situation and constitutional violations would occur frequently without proper training. (*Id.*). Plaintiff further argues that the "fact that Mr. Foster was not assessed one time, despite plenty of time to do so and the fact that there were numerous responders on scene establishes a shocking lack of training." (*Id.*).

The Court mostly accepts defendants' argument in full on this claim. The Court particularly agrees with defendants' argument that plaintiff's allegations about the training are conclusory. Plaintiff alleges that defendants failed in their duty to train the medical personnel to prevent a variety of issues. But plaintiff includes no facts about what training was missing. Plaintiff seems to argue that the alleged failures in Foster's situation shows the lack of training, which illustrates the Court's point. Plaintiff's argument here works backwards. Plaintiff reasons that because defendants allegedly did not handle the Foster situation properly in several ways, that their training, therefore, must have been deficient. But there needs to be facts alleged that, if true, would support a conclusion that the training was deficient, and would support the conclusion that it led to the Foster situation. Those factual allegations are missing here. Also, as defendants argue, plaintiff's allegation that the need for additional training was obvious reads as formulaic and does not have supporting facts. And, as mentioned above, these types of claims normally require some showing of previous incidents which superiors were aware of yet acted with deliberate indifference afterwards. There are no such allegations here.

22

Thus, defendants' motion to dismiss Count 7 is **granted**.

### c. Count 8

In Count 8, plaintiff brings a claim against the City based upon Haden and Wood's alleged "failure to screen, investigate and discipline" LaMere. (Doc. 2, at 35–38). Plaintiff alleges defendants failed in their duty to screen, investigate, and discipline LaMere

> in order to prevent her violations of Mr. Foster's clearly established constitutional rights in the following ways: 1) failing to properly screen her for hire; 2) failing to properly investigate and discipline her following multiple prior dangerous and injurious medication errors with patients in violation of their clearly established constitutional rights; and 3) failing to discipline her so that she was no longer in a position to fatally disregard Mr. Foster's clearly established constitutional rights[.]

(*Id.*, at 37).

Defendants argue this claim should be dismissed for largely the same reasons as the other claims in this section. Defendants specifically argue plaintiff has not alleged any instances in which Haden or Wood failed to screen, investigate, or discipline any employees. (Doc. 23-1, at 18). Defendants note that although plaintiff alleges that LaMere had prior medication errors with patients in violation of their constitutional rights, plaintiff fails to allege facts explaining what those incidents were or that the City had knowledge of the prior incidents. (*Id.*).

Plaintiff argues the City had knowledge that LaMere "had previously injected patients with incorrect medication and that she posed a threat to patients." (Doc. 30, at 17). Plaintiff further argues the City "had a pattern and practice and of ignoring signs that it was highly probable that she would violate patients' constitutional rights." (*Id.*).

Defendants again have the better argument. First, plaintiff has made no factual allegations regarding the City's screening of LaMere before it hired her. All plaintiff does is make a conclusory allegation that defendants failed to properly screen LaMere

23

for hire, without any specific facts about her hiring. This single, unsupported allegation is insufficient to state a claim.

On the failure to investigate and discipline aspects, perhaps plaintiff has alleged that LaMere had previous medication errors, although even that is only vaguely pleaded. As defendants note, this type of claim generally requires a plaintiff to point to at least one—usually more—specific incidents which put the City on notice of misconduct constituting a constitutional violation, and to the City's deliberate decision to not act in response. Plaintiff has failed to allege any facts showing the City's failure to investigate or discipline; this is perhaps the case because plaintiff has not pointed to any specific instances of LaMere's alleged previous failures. Without specific facts regarding LaMere's previous medication errors, it would indeed be difficult to allege specific facts regarding the City's failure to investigate or discipline said misconduct.

Perhaps as a last-ditch effort, plaintiff again resorts to the argument that LaMere's actions in Foster's case illustrates "a total failure to screen, investigate and discipline Deanna LaMere." (*Id.*). This argument again looks in the wrong direction. Plaintiff follows that up with the assertion that "[t]here is no more urgent and likely violation of clearly established constitutional rights than the failure to help an objectively dying man begging the Defendants for help." (*Id.*). Nobody seems to disagree with the conclusion that, assuming all of plaintiff's allegations are true, LaMere's failures violated Foster's constitutional rights. But that is not the issue under this claim. The issue is whether the City, through Haden and Wood, were deliberately indifferent to Foster's rights by their failure to screen, investigate, and discipline LaMere. Without any facts showing the City's deliberate indifference—i.e., what happened previously, what the City knew, and how the City responded (or failed to respond)—plaintiff's claim must fail.

Thus, defendants' motion to dismiss plaintiff's Count 8 is **granted**.

### d. Count 9

In Count 9, plaintiff brings a failure to supervise claim against the City based upon Haden and Wood's alleged failure to supervise the fire and rescue personnel. (Doc. 2, at 38–41). Plaintiff alleges the City failed to supervise

> by failing to monitor their day-to-day work, including the SCFR Individual Defendants' use of chemical restraints and responses to adverse reactions to same, ability to assess patients and their routine of doing so upon arrival and before and after the application of interventions, their ability to differentiate between different medications, and whether they were falsifying medication verifications.

(*Id.*, at 39–40).

The parties again make basically the same arguments as they make regarding the other claims in this section. Defendants argue the claim requires factual allegations of prior incidents and the City's knowledge and deliberate indifference to the prior incidents. (Doc. 23-1, at 15). Plaintiff argues its allegations are sufficient because the medical personnel would repeatedly face this situation and because failing to supervise presents the high likelihood that constitutional violations will occur, leading to a finding of the City's deliberate indifference. (Doc. 30, at 17–19).

The Court concludes that defendants have the better argument for the same reasons as discussed under the other claims. Generally, to show deliberate indifference under a failure to supervise claim, there must be a showing of prior similar misconduct which the City failed to respond to properly, which shows its deliberate indifference. The factual allegations are lacking on this front. There are also no factual allegations showing the City's knowledge of such misconduct.

Thus, defendants' motion to dismiss plaintiff's Count 9 is **granted**.

### 3. *Supervisory Liability—Counts 12 & 13*

The final set of claims at issue here are two of plaintiff's Section 1983 supervisory liability claims. As the Eighth Circuit has explained:

> To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights. [*Iqbal*, 556 U.S. at 676]. While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quotation omitted); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989). Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) (citing *Trudeau v. Wyrick*, 713 F.2d 1360, 1367 (8th Cir. 1983)).

*Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

In Counts 12 and 13, plaintiff makes supervisory liability claims against Haden and Wood in their individual capacities for failure to train, failure to implement adequate policies, and failure to supervise or enforce policies. (Doc. 2, at 46–49). The parties again make very similar arguments under these claims as they make regarding the *Monell* failure to train and failure to supervise claims. (*See* Docs. 23-1, at 19–22; & 30, at 21–22). Defendants again primarily argue plaintiff's complaint lacks sufficient factual allegations to support the claims. Plaintiff again argues that the facts alleged in the complaint plausibly state a claim that Haden and Wood acted with deliberate indifference with personal knowledge of the constitutional risk posed by their alleged inadequate supervision, training, and policies.

The outcome here is also the same as above. As defendants argue, plaintiff simply has not alleged sufficient facts supporting these claims. Plaintiff does not point to what policies were inadequate. Plaintiff just alleges that Haden and Wood established and

maintained policies, practices, and customs which caused the violations of Foster's constitutional rights and that the policies and procedures were inadequate. Plaintiff also alleges Haden and Wood failed to supervise, train, and implement policies despite knowing or reasonably constructively knowing that the subordinates presented an excessive risk of harm to Foster. But plaintiff does not say how Haden and Wood knew of this risk. And there are no factual allegations which would lead to this conclusion. Ultimately, these claims fail for the same reasons as the *Monell* claims: there are inadequate facts to show that Haden or Wood knew their policies, supervision, and training were inadequate, and, beyond that, there are inadequate factual allegations to show that Haden or Wood in fact were inadequate in supervising, training, or creating policies.

Thus, defendants' motion to dismiss plaintiff's Counts 12 and 13 is **granted**.

## IV. CONCLUSION

For the reasons stated above, the Court **grants** defendants' motion to dismiss. (Doc. 23). Plaintiff's Counts 5, 6, 7, 8, 9, 10, 12, and 13 are dismissed.

**IT IS SO ORDERED** this 2nd day of March, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa